[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10495

_____

D.C. Docket No. 2:16-cv-00832-LCB

MOSES STRYKER,

Plaintiff-Appellant,

versus

CITY OF HOMEWOOD,
JASON DAVIS,
BRIAN WAID,
FREDERICK BLAKE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(October 20, 2020)

Before WILLIAM PRYOR, Chief Judge, GRANT, Circuit Judge, and JUNG,[*]
District Judge.

---

[*] Honorable William F. Jung, United States District Judge for the Middle District of Florida,
sitting by designation.

GRANT, Circuit Judge:

Moses Stryker was tased, beaten, and left with a broken jaw after a routine accident investigation by City of Homewood police officers spiraled out of control. In this appeal, he argues that the district court erred by granting summary judgment to the defendants based on qualified immunity. After careful review and with the benefit of oral argument, we conclude that the district court did not view the evidence in the light most favorable to Stryker before ruling against him, and accordingly reverse its judgment.

I.

Early one morning, Moses Stryker, a commercial truck driver, was training another man to drive on a highway near Birmingham, Alabama. Shortly before 2:00 A.M., the pair arrived at their delivery destination—a Walmart store in Homewood, Alabama. While Stryker (who at this point was driving) attempted to maneuver the truck in the parking lot to reach the loading dock, a woman parked her car in front of the truck in an apparent attempt to block it from moving. The woman accused the men of hitting her car on the highway and said that she had already summoned the police.

Officer Jason Davis, a City of Homewood police officer, was the first to arrive on scene. Although his vehicle was equipped with a dash camera, he turned it off when he arrived. He instructed Stryker and the woman to park in different areas of the parking lot, away from each other. Stryker complied, but asked Officer Davis to allow him to park in a lighted part of the parking lot near a security camera, instead of the dark area where he was instructed to park.

2

According to Stryker, Officer Davis became angry and threatened to "lock [his] ass up" if he did not "shut up."

After the truck was moved, Officer Davis came over and inspected it with Stryker and his trainee. Although the officer did not see any evidence of a hit and run, he determined that any accident would have occurred outside of his jurisdiction, and so he called for another agency to come conduct the investigation. From this point on, Stryker's account of events diverges drastically from Officer Davis's.

As Stryker tells it, while waiting for the other officer to arrive, he remembered that company policy required him to take pictures of accident scenes. He went to the cab of his truck, retrieved a company-issued camera, and walked towards the woman's car to take photographs. When Officer Davis saw him walking towards the other car, he asked him what was in his hand and told him he was not allowed to take pictures. Stryker tried to explain that he needed to take pictures of the complainant's car as required by his company policy, but Davis was unpersuaded. As Stryker began moving back to his truck, Davis shoved him and asked what he was holding. Stryker said it was his camera, and Davis instructed him to put it away. When Stryker attempted to comply by putting the camera in his pocket, Davis drew his pistol and pointed it at him. Stryker explained to the officer that he was just putting his camera away, and Davis holstered his weapon.

Stryker turned to return to his truck. Without warning, and without telling Stryker that he was under arrest, Officer Davis shot him in the back with a taser and kicked him when he fell to the ground. After the unexpected tasing, Stryker

3

was afraid and tried to get away.  He crawled to his truck and attempted to climb the stairs to the cab, but Davis caught up and struck him multiple times in the face—breaking his jaw and causing him to bleed.  Stryker was able to get himself into the cab and locked the door, but Davis tased him again through the open window.  Stryker managed to close the window and put his hands on the dash to show that he was not a threat and was not trying to escape, but Davis broke out the window with his baton.  Davis then went over to the passenger side of the cab and resumed his attempts to pull Stryker out of the truck.  At some point in the melee, Stryker was pepper sprayed.

During the altercation, Davis radioed for assistance.  Officers Brian Waid and Frederick Blake (both City of Homewood officers) arrived while Davis was struggling to get Stryker out of the passenger side of the cab.  Both officers assisted in subduing and handcuffing Stryker.  Stryker alleges that after he was compliant the officers continued to kick, strike, and choke him.  According to Stryker, the officers had control of his hands but continued to strike him while yelling "give me your hands."  Although Stryker said that he was unsure of precisely "which officer did what," he said that "everybody" was kicking him.

Officer Davis tells a very different story.  Under his version of events, when he explained that another police agency was going to come to complete the accident investigation, Stryker got angry and began yelling.  At some point, Stryker quickly reached into his pocket, prompting the officer to draw his pistol.  When the officer realized that Stryker only had a camera and not a weapon, he reholstered his own weapon, told Stryker to return to the truck, and placed his hand

4

on Stryker's shoulder to guide him.  Stryker then attempted to elbow Davis, so the officer attempted (unsuccessfully) to take Stryker to the ground with an arm-bar technique.  When the arm-bar technique failed, Stryker pulled away and tried to get back in his truck, striking the officer in the head in the process.  Only then, Davis says, did he deploy his taser.

Officers Blake and Waid, although not present for the initial tasing, also tell a different story about what happened once Stryker was removed from the truck.  Both admit that Waid struck Stryker on his head or neck several times once he was on the ground, but claim that the strikes were necessary to gain compliance.  And Officer Blake testified that he put his knees on Stryker's back while he was on the ground, but only in an attempt to get Stryker's arm behind his back.  Both deny using force once Stryker became compliant, however, and both admitted at their depositions that such force would have been unreasonable.

Stryker was criminally charged with assault, disorderly conduct, resisting arrest, and a municipal ordinance violation for failing to comply with a lawful order.  The ordinance made it illegal to "fail, neglect or refuse to comply" with any lawful order of a city officer.  The assault and disorderly conduct charges were dismissed, and Stryker was acquitted of resisting arrest.  He was convicted by a jury only of the municipal failure-to-comply violation.

In this lawsuit, Stryker brings the following claims: (1) a § 1983 excessive force claim against Officers Davis, Waid, and Blake; (2) a § 1983 municipal liability claim against the City of Homewood; and (3) state law claims against the individual officers for assault, battery, negligence, and wantonness.  On the

5

defendants' motion for summary judgment, the district court found that no officer committed a constitutional violation and that all were entitled to qualified immunity. Accordingly, it granted summary judgment to the officers on the basis of qualified immunity, granted summary judgment to the city because there was no underlying excessive force violation, and declined to exercise jurisdiction over the state law claims. Stryker appealed.

## II.

We review decisions about summary judgment based on qualified immunity de novo. *See Salvato v. Miley*, 790 F.3d 1286, 1292 (11th Cir. 2015). "Summary judgment is warranted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020) (quotation marks and citation omitted). In making this determination, we view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of the non-movant. *Id.*

## III.

Stryker's overarching contention on appeal is that the district court erred because it disregarded his evidence and resolved contested issues of fact against him to grant the defendants qualified immunity.

Qualified immunity is a doctrine that shields public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Carruth v. Bentley*, 942 F.3d 1047, 1053 (11th Cir. 2019) (quoting *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009)).  Law enforcement officers acting within their discretionary authority "are entitled to qualified immunity from suit unless a plaintiff can establish that (1) the officer violated a constitutional right, and (2) the right violated was clearly established."  *Alston v. Swarbrick*, 954 F.3d 1312, 1318 (11th Cir. 2020).  If, at the summary judgment stage, the evidence construed in the light most favorable to the plaintiff shows that there are facts inconsistent with granting qualified immunity, then the case and the qualified immunity defense proceed to trial.  *Simmons v. Bradshaw*, 879 F.3d 1157, 1163–64 (11th Cir. 2018).  We analyze the excessive force claim against each defendant separately.  *See Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018).

## A.

The district court concluded that Officer Davis did not violate Stryker's Fourth Amendment right to be free from excessive force.  Stryker challenges this conclusion and argues that, taking the facts in the light most favorable to him, the district court erred with respect to two specific instances of force.  He contends that Officer Davis used excessive force when he initially used the taser as well as when he participated in kicking, striking, and choking him once he was out of the truck and compliant.

When evaluating the constitutionality of an arresting officer's use of force, we must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the government's interest in safely apprehending the suspect.  *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted).  This is a necessarily fact-intensive inquiry that requires us to consider (1) "the severity of

7

the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*  At the summary judgment stage, these *Graham* factors all cut in favor of an excessive force finding for both the tasing and the later force applied when Stryker was taken out of the truck.

1.

We begin by considering Officer Davis's initial use of the taser.  According to Stryker's testimony, without ever informing him that he was under arrest or using any lesser force, Officer Davis shoved him, shot him in the back with the taser, and kicked him once he fell to the ground—even though Stryker posed no threat and was (at the time of the taser use) complying with the officer's instructions.[1]  The district court held that this conduct was reasonable under the *Graham* factors.  Our de novo review of this conclusion, however, demonstrates that it was incorrect.

The first *Graham* factor involves assessing the severity of the crime at issue. *Graham*, 490 U.S. at 396.  This factor favors Stryker.  As the district court recognized, and as Stryker himself concedes on appeal, "[p]robable cause for Mr. Stryker's arrest was conclusively established based on the state court conviction." Nevertheless, the underlying crime—a misdemeanor municipal ordinance violation

---

[1] The officers contend in their brief that Stryker is collaterally estopped by his criminal conviction from arguing that he was complying with Officer Davis's instructions to return to his truck when he was tased.  We disagree.  The criminal complaint relating to the failure-to-comply ordinance violation sheds no insight into the sequence of events, and a finding by the jury that Stryker failed to follow Officer Davis's orders at some point during the investigation is not inconsistent with Stryker's assertion that, at the time he was tased, he was complying with Davis's instructions.

8

for failing to comply—cannot fairly be described as "severe." We have previously described similar charges, for instance obstruction and disorderly conduct charges stemming from a failure to comply with a law enforcement officer's order, as "of minor severity" for the purpose of the *Graham* analysis. *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002); *see also Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011) ("[d]isorderly conduct is not a serious offense" and "resisting arrest without force does not connote a level of dangerousness that would justify a greater use of force"); *Reese v. Herbert*, 527 F.3d 1253, 1274 (11th Cir. 2008) ("The crime of misdemeanor obstruction is a crime of 'minor severity' for which less force is generally appropriate.").

The district court reached the opposite conclusion and said that "Mr. Stryker's refusal to comply with Officer Davis's orders is sufficiently severe under the circumstances to justify the use of force against him." This conclusion conflicts with our precedent: "non-violent suspects, accused of minor crimes, who have not resisted arrest . . . are victims of constitutional abuse when police used extreme force to subdue them." *Fils*, 647 F.3d at 1289. Under Stryker's version of the facts, he was not resisting or fleeing when he was shot in the back with the taser. Although no party disputes that Officer Davis had probable cause to arrest him for his previous noncompliance, the crime at issue was not severe.

The second and third *Graham* factors—which ask whether the suspect poses a threat to officers or is attempting to evade arrest—also favor Stryker. *Graham*, 490 U.S. at 396. Under Stryker's version of the facts, he was returning to his truck with his back to Officer Davis when Davis shot him in the back with the taser. He

9

denies ever attempting to elbow the officer and testified that it would have been "impossible" for the officer to have thought he was trying to hit him. Similarly, under his version of events he could not have been attempting to resist or evade arrest because, until he was tased, he had no indication that Officer Davis intended to arrest him.

The district court reached the incorrect conclusion on these two factors because it decided disputed facts in favor of the officer's version of events. The district court stated that "Stryker opted to walk away from Officer Davis, prompting Officer Davis to use an arm bar takedown (which was not effective) and then to use his taser in a further effort to bring Mr. Stryker into compliance." This description of progressively escalating force is inconsistent with Stryker's testimony. Stryker denies that an arm-bar takedown (or any other lower level of force) was attempted and alleges that the first indication that he was under arrest was a taser shot to the back.

Having improperly resolved this disputed fact in favor of the officer, the district court concluded that the use of force in this case was like the force used in *Draper v. Reynolds*, where we held that tasing a "hostile, belligerent, and uncooperative" motorist who "used profanity, moved around and paced in agitation, and repeatedly yelled" at an officer on the side of a busy highway did not constitute excessive force. 369 F.3d 1270, 1278 (11th Cir. 2004). But the version of events set forth by Stryker is not at all like the facts in *Draper*. Stryker testified that he did not curse at the officer or yell in anger, and that he did not give him any reason to think he was a threat. That he was not posing a threat is also supported

10

by the fact that, unlike the plaintiff in *Draper* who was aggressively facing the officer and tased in the chest, Stryker was tased in the back without warning while attempting to return to his truck after putting the camera in his pocket as instructed. Nothing in *Draper* supports the view that tasing a cooperative, nonthreatening misdemeanant in the back is an appropriate means of effecting an arrest.[2]  Quite the opposite.  In the years since *Draper*, we have explicitly held—and thus clearly established—that employing a taser on a compliant, nonthreatening suspect violates the Constitution.[3]  *Fils*, 647 F.3d at 1288–89.

In conclusion, all of the *Graham* factors indicate that, under Stryker's version of events, the initial use of the taser by Officer Davis was objectively unreasonable.  Moreover, at the time of the incident it was clearly established that using violent force generally, and a taser specifically, on a compliant, nonaggressive, and nonthreatening misdemeanant violates the Fourth Amendment. *See id.*

2.

Stryker also contends that Officer Davis (along with Officers Waid and Blake) beat, kicked, and choked him once he was out of the truck and after they

---

[2] As an additional point, this Court in *Draper* was able to review the video footage from the arresting officer's dash camera.  369 F.3d at 1273.  Because Officer Davis turned off his camera while conducting this investigation, however, we do not have this option and are left to contemplate competing versions of the truth.

[3] Judges Grant and Jung are not of the view that qualified immunity would apply even if the conversation between Stryker and Officer Davis could reasonably be viewed as a verbal argument.  We need not belabor the point, however, because even if that set of facts did fall within a "gray area" of our precedents, all three judges agree that it no longer would after this opinion.

11

had control over his body and hands.  Assuming this to be true, we have no hesitation concluding that such conduct amounts to a well-established constitutional violation.  We have consistently held that "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."  *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008).  And there was no doubt at the time of this incident that, in this Circuit, striking a compliant and nonthreatening suspect constitutes excessive force.  *Id.*; *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000); *see also Smith v. Mattox*, 127 F.3d 1416, 1419–20 (11th Cir. 1997) (use of force following suspect's surrender that resulted in a broken arm was excessive even though suspect had previously been violent towards officers).

The district court reached a contrary conclusion only by declining to consider some of Stryker's critical testimony.  The court found that Stryker offered "conflicting testimony concerning the extent to which he was kicked after being removed from the truck" and reasoned that, as a result, it "need not consider" the evidence.  But the "conflicting testimony" noted by the district court merely reflected confusion during the deposition.  Stryker testified that he was kicked at two discrete points during the incident with Officer Davis—once immediately after he was tased and again when he was removed from the truck with the other officers present.  At one point during the deposition, Stryker exhibited confusion regarding which point in time he was being asked about and attempted to distinguish the kicks he received in his back (which occurred immediately after he was tased) and the kicks he received in his sides and shoulder (which occurred once he was removed from the truck).  While his testimony on this point was not the model of

12

clarity, it never contradicted his consistent assertion that he was kicked by multiple officers once he was removed from the truck and compliant.

The district court's failure to consider Stryker's testimony on this basis was error. A "plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019) (citation omitted). Because Stryker's testimony met none of these criteria, the district court erred by disregarding testimony that would have created a genuine issue of fact for trial. If it is true that Stryker continued to be struck and kicked after he ceased resistance and submitted to the officers' control, the force used against him was clearly unconstitutional.[4]

### B.

Stryker also challenges the district court's grant of summary judgment to Officers Blake and Waid on the basis of qualified immunity. The only issue on appeal is whether these officers continued to use force once Stryker was compliant and had ceased all resistance.

Resolution of this issue is simple. Stryker testified that both officers, along with Officer Davis, continued to beat, kick, and choke him once he was removed

---

[4] Stryker argues that, because the initial tasing was not objectively reasonable, "all the subsequent abuse must be laid at Davis's feet." Not so. The Supreme Court has already rejected the rule that a prior constitutional violation can serve as the foundation for an excessive force claim for later conduct and has instructed us to analyze each potential violation on its own terms. *Cty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1547 (2017).

13

from the truck and after he had submitted to their authority.[5]  The officers deny it. This "presents us with 'a classic swearing match, which is the stuff of which jury trials are made.'"  *Id.* (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)).  For the reasons already articulated, if a jury believes Stryker's testimony, he is entitled to a judgment in his favor.  Striking a compliant suspect who has surrendered his hands and stopped all resistance amounts to a clearly established constitutional violation.

*     *     *

Very little is clear about exactly what happened in the early morning hours after Stryker arrived at Walmart.  The officers articulate a version of events that justifies their use of force.  Stryker tells a story that presents a clear constitutional violation.  Resolving that dispute is for a trial, not summary judgment.  The district court thus erred by resolving disputes of fact against the plaintiff and by granting the officers qualified immunity on that basis.  And because of this error, the grant of summary judgment to the City of Homewood and the dismissal of Stryker's state law claims are due fresh consideration.  Accordingly, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings.

---

[5] Although Stryker was unclear about exactly which officer was striking him while he was on the ground, he testified that "everybody" present when he was pulled out of the truck and forced to the ground was kicking him.  And it is undisputed that all three defendant officers were involved at this point in the struggle and that at least Officer Waid admitted to hitting Stryker while they were on the ground.  With respect to Officer Blake, Stryker testified that "[i]f Officer Blake was the one that came to the door, then he was part of the hitting."  Officer Blake testified that he came to the door and helped pull Stryker down to the ground.

14

WILLIAM PRYOR, Chief Judge, concurring specially:

I agree with my colleagues that we should reverse the grant of qualified immunity to the defendants. I write separately to explain why one issue—whether Officer Davis should receive qualified immunity for firing his taser at Stryker before the other officers arrived—is a close call.

Accepting Stryker's version of the facts as true, after having an ordinary conversation with Officer Davis, Stryker went to his truck to get a camera so that he could comply with his company's policy requiring drivers to take pictures of accident scenes. When Stryker returned with the camera, Officer Davis told him not to take pictures of the scene. Stryker tried to convince Officer Davis to let him take pictures anyway. Eventually, Officer Davis told Stryker to put the camera away. Stryker said he would put the camera in his truck. Officer Davis told him not to put it in the truck. He told Stryker to put the camera in Stryker's pocket instead. After expressing concern about reaching into his pocket in front of a police officer, Stryker moved to put the camera in his pocket. As he did, Officer Davis drew his gun. Stryker "yelled at him." At some point during the interaction, Officer Davis shoved Stryker. Either soon after Officer Davis pulled his gun or as Officer Davis shoved him, Stryker began to walk to his truck. As Stryker walked away, Officer Davis tased him.

15

This appeal turns on one page of the transcript of Stryker's deposition. In the context of Stryker's attempt to convince Officer Davis to permit photographs, an attorney asked Stryker, "[W]ould it surprise you if Officer Davis thought you were arguing with him at that moment?" Stryker answered, "Yes." After a clarifying question, the attorney tried again: "[I]f you were in [Officer Davis's] shoes and you were hearing the explanation that you were giving him after he told you no pictures, could you see why he might think you're arguing with him?" Stryker answered, "I wouldn't be surprised."

At the summary judgment stage, we must draw all reasonable inferences in Stryker's favor. Even though his answer to the second question came perilously close to a concession that a reasonable officer could view the interaction as an argument, we must read the second answer in concert with the first. And reading the two answers together, it is reasonable to infer that Stryker meant only that it would be unsurprising if *Officer Davis* interpreted the interaction as an argument, not that reasonable officers *generally* could hold that view.

Had Stryker admitted that the situation could reasonably be viewed as an argument, qualified immunity would be appropriate because this appeal would fall in a gray area within our precedents. On the one hand, Stryker argued with Davis. And after a tense situation in which Davis drew his gun and Stryker yelled at Davis, Stryker defied an order and began walking back to the truck, which a

16

reasonable officer could have seen as an attempt either to leave or to retrieve a weapon. We have granted qualified immunity when a suspect is "hostile, belligerent, and uncooperative." *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004); *see also Zivojinovich v. Barner*, 525 F.3d 1059, 1065, 1072–73 (11th Cir. 2008). On the other hand, Stryker was not violent or nearly as belligerent as the plaintiff in *Draper*, and we have repeatedly held that force was excessive when an officer tased a nonviolent and compliant suspect or one who had stopped resisting. *Fils v. City of Aventura*, 647 F.3d 1272, 1289–90 (11th Cir. 2011); *see also, e.g.*, *Glasscox v. City of Argo*, 903 F.3d 1207, 1214–15 (11th Cir. 2018). Further, a reasonable officer would have known that Stryker had no reason to think he was under arrest.

I agree with the majority that Officer Davis violated the Fourth Amendment the first time he fired his taser at Stryker. But our precedents did not inexorably demand this conclusion at the time of the confrontation; instead, they "reveal[ed] the hazy legal backdrop against which [Davis] acted." *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015).

Because summary judgment demands that judges draw all reasonable inferences in Stryker's favor, I cannot conclude that he conceded the interaction about whether he could take pictures was an argument. When faced with this equivocal testimony at trial, the jury will face no such procedural strictures, and the

17

facts may support the application of qualified immunity at that point. But for now, I agree with the majority that Stryker has—barely—avoided summary judgment on the basis of qualified immunity.