[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 21-10439
Non-Argument Calendar
_____

D.C. Docket No. 3:17-cv-00169-TCB-RGV

JAVIER GARCIA,

Plaintiff-Appellee,

versus

DAVID RILEY,
Individually and in his Official Capacity as a Former City Council Member,
DOUGLAS JEWELL,
Individually and in his Official Capacity as Mayor of the City of Grantville,

Defendants-Appellants,

CITY OF GRANTVILLE, GEORGIA,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 10, 2021)

Before JORDAN, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Javier Garcia became the Chief of Police of Grantville, Georgia in 2014. Six months and one mayoral election later, he resigned. Garcia filed an employment discrimination claim against former Grantville officials David Riley and Douglas Jewell, alleging that they had terminated him based on his race. Riley and Jewell now appeal from the district court's decision that they are not entitled to qualified immunity. Because the district court applied the proper burden-shifting framework in its qualified immunity analysis and because the right to be free from employment discrimination is clearly established law in this Circuit, we affirm.

## I.

Garcia's brief tenure serving the town of Grantville was apparently a troubled one. Garcia was hired as Chief of Police by the City Council in July 2014 and appointed as interim city manager that October. But before long, he became the subject of complaints alleging that he had misused police resources. Both internal and outside investigations ensued. In the meantime, newly elected Grantville Mayor Jewell released Garcia from his role as interim city manager.

During this period of professional turbulence, Garcia also faced problems of a more personal nature. A Cuban by birth, Garcia alleges that he encountered racially motivated opposition from Jewell and Riley soon after Jewell won the

2

2014 mayoral election.  Riley hurled racially charged insults at Garcia on multiple occasions, calling him a "dumb Cuban," a "rafter," and an "illegal."  Riley also told Garcia that he would "not have a wetback running anything in the city" and that Riley's "white boy" would soon replace Garcia.  Garcia alerted Jewell to Riley's behavior, but Jewell did nothing to stop the abuse.  Instead, he compounded it by telling Garcia that he "would not allow a foreigner to run the city."

The outside investigators looking into complaints about Garcia reported their findings to the Grantville City Council in early February 2015.  A few days later, the City Council (which included Riley, Jewell, and three others) held a closed executive session to discuss what to do about Garcia.  A formal vote on personnel matters had to be be taken publicly in open session as a matter of Georgia law, so the Council took no binding action at that time.  But immediately afterward, the city attorney told Garcia in Jewell's presence that the Council had the votes to terminate him.  Faced with the dilemma of quitting or being fired, Garcia wrote out his resignation on a piece of paper provided by the city attorney.  The Council then entered open session, where it voted to accept Garcia's resignation and to hire Steve Whitlock, a white man, in his place.

Garcia turned to the courts for relief.  As relevant here, Garcia sued Riley and Jewell under 42 U.S.C. § 1981, alleging that they had terminated him on the

3

basis of his race.  Riley and Jewell moved for summary judgment, arguing that they were entitled to qualified immunity because they had been acting in their discretionary authority as Grantville city officials.  In a non-final Report, Recommendation, and Order (the Report), a magistrate judge held that Garcia had shown a violation of his clearly established rights and that Riley and Jewell were therefore not entitled to qualified immunity.  Overruling Riley and Jewell's objections, the district court fully adopted the Report as a binding order.  Riley and Jewell now appeal.

## II.

We review dispositions of summary judgment motions based on qualified immunity de novo.  *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020).  Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In making this determination, we view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of the non-movant."  *Stryker*, 978 F.3d at 773.  In deciding whether a district court misidentified clearly established law, we may either adopt the facts assumed by the district court or conduct our "own review of the record in the light most favorable to the nonmoving party."  *Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996).

III.

Riley and Jewell argue that the district court erroneously denied them qualified immunity.  To establish a qualified immunity defense, each former official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (quotation omitted).  Garcia does not dispute that Riley and Jewell were acting within their discretionary authority.  The burden therefore shifts to Garcia to show that Riley and Jewell "violated a statutory or constitutional right" and that "the right was clearly established at the time of the challenged conduct." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017) (quotation omitted).

On appeal, Riley and Jewell argue that the district court improperly shifted Garcia's burden to them and that it misapplied the "clearly established law" prong of the qualified immunity analysis.  We find neither argument persuasive.

A.

Riley and Jewell first argue that that the district court erroneously assigned them the burden of proof—that is, the district court required them to show that a violation of clearly established law had *not* occurred.

There is no basis in the record for this assertion.  The district court adopted the magistrate judge's Report, which meticulously recited the correct legal

5

standard for establishing qualified immunity: once a defendant official shows that she was acting within the scope of her discretionary authority, the "burden then shifts to the plaintiff to overcome the defense of qualified immunity," and the plaintiff must establish that the defendant violated a clearly established right. The Report said that the court considered "only whether [Garcia] has satisfied the two-prong test." And the court ultimately decided that Garcia had "alleged sufficient facts to show a violation of his right to be free from racial discrimination protected under § 1981" and that Garcia's argument that "there is a clearly established right to be free from employment discrimination on the basis of race" was correct.

Riley and Jewell respond by seizing upon a single sentence in the Report explaining that a particular line of case law is inapposite because here, "the record does not 'indisputably' establish that Riley and Jewell were motived, at least in part," by lawful considerations. They argue that the district court expected them to "indisputably establish" a motive other than racial animus in this case. But this contention ignores the context of the quoted sentence. In their arguments below, Riley and Jewell had cited to our decision in *Rioux v. City of Atlanta*, 520 F.3d 1269 (11th Cir. 2008), a case involving a mixed-motive racial discrimination claim. *Rioux* held that summary judgment was appropriate when the record "undisputably" established that the defendant was "motivated *at least in part* by lawful justifications." *Rioux*, 520 F.3d at 1284. But this case is a single-motive

6

case, and the reasoning cited by defendants in *Rioux* is therefore inapplicable. The district court did not require Riley and Jewell to "indisputably establish" a non-racial motive to receive qualified immunity. Rather, it correctly reasoned that Garcia's single-motive claim was unlike the mixed-motive claim in *Rioux*, that Garcia had "presented sufficient evidence for a reasonable jury to doubt defendants' proffered reason" for termination, and that the additional defense available in *Rioux* was thus not available to Riley and Jewell.

We agree with the district court's conclusion that the Report "properly applied the burden-shifting framework" in its qualified immunity analysis. The district court found that Garcia met his burden. It did not find that the burden was not Garcia's to meet.[1]

### B.

Riley and Jewell next argue that they did not violate Garcia's clearly established rights because our precedent does not directly hold that their specific conduct constitutes an adverse employment action.[2] They contend that any action taken during the closed executive meeting prior to Garcia's resignation was either

---

[1] Riley and Jewell further contend that the district court "implicitly" transferred the burden as to the clearly established law prong to them. But this argument merely echoes their assertion that the district court misidentified clearly established law—an issue that we address separately below.

[2] Riley and Jewell also contend that their conduct was not "sufficiently concurrent" to Garcia's resignation, an argument that we do not consider because it was raised for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

non-binding or "an ultra vires act" void under Georgia law, which requires binding votes to be taken in public session. *See* O.G.C.A. § 50-14-1(b)(2). Thus, they conclude, unless Garcia can produce case law showing that either an ultra vires vote or a mere "expression of a preference" in a closed meeting can constitute an adverse employment action under federal antidiscrimination law, qualified immunity applies.

Riley and Jewell would place a burden on Garcia that the law does not require him to bear. To be sure, the "clearly established" standard "requires a high degree of specificity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quotation omitted). That is, "in the light of pre-existing law the unlawfulness" of a government official's conduct "must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation omitted). But Garcia can meet his burden without showing that "the very action in question has previously been held unlawful." *Id.* (quotation omitted).

In this Circuit, it is "beyond doubt" that the "right to be free from intentional racial discrimination" is clearly established. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991). In particular, we "have often noted the patently obvious illegality of racial discrimination in public employment." *Bryant v. Jones*, 575 F.3d 1281, 1300 (11th Cir. 2009) (quotation omitted).

Riley and Jewell argue that the district court improperly defined this clearly established right at "too high a level of generality," thus denying them notice that their alleged actions were unlawful. Not so. In determining clearly established law, "the question is not whether the defendants actually knew, or should have known, that their actions were unlawful, but, rather, whether *reasonable* officials occupying their positions would have known that their actions were unlawful." *Id.* (emphasis added). And here, our law prohibiting racial discrimination was more than sufficient to put Riley and Jewell on notice that their conduct was wrong. We have previously made it clear that employer intent is crucial to determining whether termination has occurred, and that such intent "may be inferred not only from words but also from conduct, as well as the specific circumstances of the challenged job action." *Thomas v. Dillard Dep't Stores, Inc.*, 116 F.3d 1432, 1437 (11th Cir. 1997). Termination of an employee due to race is unlawful no matter the form the termination takes, whether a pink slip, a verbal statement, or a coerced resignation. Even if an executive session vote is per se nonbinding under state law (a conclusion rejected by the district court),[3] no reasonable official could believe that using such a vote to leverage a resignation while motivated by racial animus would be lawful.

---

[3] The district court observed that Georgia courts have interpreted the state statute at issue to mean that an executive session vote can become binding if not challenged in time. *See Heiskell v. Roberts*, 342 Ga. App. 109, 114–15 (2017).

9

Riley and Jewell offer no precedent suggesting that they could have reasonably believed their behavior was within the law. Instead, they point to a slew of Fourth Amendment cases in which the Supreme Court found that the law at issue was not clearly established. But Fourth Amendment holdings are often extremely fact specific and are poor analogues for racial discrimination cases. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018). The law prohibiting racial employment discrimination is crystal clear, notwithstanding any shades of gray that may cloud unrelated excessive force and unconstitutional search claims.

The two employment discrimination cases cited by Riley and Jewell do little more to help their case. As explained above, one of them—*Rioux*—was a mixed-motive discrimination case with reasoning that does not apply to Garcia's single-motive suit. And the other, *Minnifield v. City of Birmingham Department of Police*, 791 Fed. App'x 86 (11th Cir. 2019), is not only unpublished and nonbinding but also off base. *Minnifield* suggested that failing to recommend an employee for a lateral transfer was not a clearly established adverse employment action. *Id.* at 88. But *termination*—the action alleged by Garcia—unquestionably is. *See Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1276 (11th Cir. 2020) ("Ms. Munoz suffered an adverse employment action because Selig terminated her.").

We agree with the Supreme Court that "general statements of the law are not inherently incapable of giving fair and clear warning to officers." *Kisela*, 138 S.

10

Ct. at 1153 (quotation omitted).  This is particularly true when the law at issue forbids the "familiar and recurring evil" of racial discrimination.  *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 868 (2017).  The district court thus correctly determined that Riley and Jewell were "on notice that termination of Garcia because of his race was a violation of clearly established law."

\* \* \*

The district court did not err by improperly shifting the burden to Riley and Jewell.  Nor did it err in identifying the clearly established law of this Circuit.  We therefore **AFFIRM** the district court's order.