[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14803

Non-Argument Calendar

_____

MATTHEW FRIEDSON,

Plaintiff-Appellant,

*versus*

SHERIFF DAVID SHOAR,
DEPUTY RYAN WALLACE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:19-cv-00237-TJC-PDB

_____

Before BRANCH and GRANT, Circuit Judges.[1]

PER CURIAM:

On February 27, 2015, Deputy Ryan Wallace of the St. Johns County Sheriff's Office stopped a vehicle driven by Matthew Friedson, who is deaf, for a traffic violation. After Friedson drove away during the traffic stop, Deputy Wallace followed him and conducted a second stop. During that second stop, Deputy Wallace handcuffed Friedson and seated him in the back of the patrol vehicle, and then released him and issued a citation for the traffic violation. Friedson sued Deputy Wallace, bringing false arrest claims under 42 U.S.C. § 1983 and state common law. He also brought claims against Sheriff David Shoar, claiming that Sheriff Shoar is liable for the false arrest under state law and for violations of the Americans with Disabilities Act and the Rehabilitation Act.

Friedson now appeals the district court's grant of summary judgment to Deputy Wallace and Sheriff Shoar, the resulting final judgment, and the denial of his motion to alter or amend the judgment. We conclude that there is no genuine issue of material fact and that the defendants are entitled to summary judgment as a matter of law. In addition, we find that the district court did not err in denying Friedson's motion to alter or amend the judgment. We therefore affirm.

---

[1] This opinion is being issued by a quorum. *See* 28 U.S.C. § 46(d).

## I.

Matthew Friedson was driving distractedly—he was looking for papers and the radio was playing.[2] Friedson did not realize that he was behind a St. Johns County Sheriff's Office patrol vehicle. Deputy Wallace, who was operating the patrol vehicle, initiated a traffic stop for the violation of a Florida statute that prohibits drivers from following too closely behind other vehicles. *See* Fla. Stat. § 316.0895(1).

When Deputy Wallace approached Friedson's vehicle, things became chaotic. According to Friedson, when Deputy Wallace approached with his gun drawn, Friedson motioned that he was deaf and tried to gesture to the officer that they should communicate by writing back and forth. He then motioned that they should relocate to a nearby parking lot, where his ex-wife and children were waiting and could interpret for them. Friedson was under the impression that they had reached an agreement to drive to the second location. Deputy Wallace, however, believed that Friedson was trying to flee. So after Friedson drove away, Deputy Wallace followed him to the parking lot and conducted a second stop.

During that second stop, Deputy Wallace communicated to Friedson by using gestures as he spoke. According to Friedson, he "complied with all the Deputy's commands." When Friedson got

---

[2] The record does not specify how the radio created a distraction for Friedson, in spite of his deafness.

out of his car, Deputy Wallace gestured for him to get back in it, and he complied. Deputy Wallace later gestured to Friedson to get out of the vehicle, and when he exited the vehicle as commanded, Deputy Wallace took him to the ground, handcuffed him, and seated him in the back of the patrol vehicle. A second deputy arrived and communicated with Friedson as his daughter interpreted. Deputy Wallace then released Friedson and issued a ticket for the traffic violation, which Friedson paid.

Just shy of the four-year statute of limitations following the incident, Friedson sued. *See* Fla. Stat. § 95.11(3). In his amended complaint, he brought two counts against Deputy Wallace in his individual capacity: the first for warrantless arrest without probable cause in violation of the Fourth Amendment under 42 U.S.C. § 1983 and the second for false arrest under state law. He also brought three counts against Sheriff Shoar in his official capacity: two for failing to provide reasonable accommodations under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) and the third for false arrest under state law.

Deputy Wallace and Sheriff Shoar moved for summary judgment. The district court granted both motions and entered final judgment in their favor. Friedson responded by filing a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), which the district court denied. Friedson now appeals the district court's order on the summary judgment motions, its final judgment against him, and its ruling on the Rule 59(e) motion.

## II.

We review the district court's grant of a summary judgment motion de novo. *Baez v. Banc One Leasing Corp.*, 348 F.3d 972, 973 (11th Cir. 2003). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making this determination, we view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of the non-movant." *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020). We review the district court's denial of a Rule 59(e) motion for abuse of discretion. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007).

## III.

We start with the district court's grant of summary judgment to Deputy Wallace and Sheriff Shoar. We find no genuine issue of material fact that precludes summary judgment on any of Friedson's claims.

## A.

First is the federal false arrest claim against Deputy Wallace under 42 U.S.C. § 1983. Friedson alleged that Deputy Wallace arrested him without probable cause in violation of the Fourth Amendment. In response, Deputy Wallace argued that he is entitled to qualified immunity and is therefore protected from liability for civil damages. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To establish entitlement to qualified immunity, an officer must first show that he acted "within his discretionary authority." *Huebner v. Bradshaw*, 935 F.3d 1183, 1187 (11th Cir. 2019). If the officer meets that burden, the plaintiff must show both that he "suffered a violation of a constitutional right" and that the constitutional right was "clearly established at the time of the alleged misconduct." *Id.* (quotation omitted).

Here, it is undisputed that Deputy Wallace was acting within his discretionary authority as a law enforcement officer when he stopped Friedson and placed him in handcuffs. Friedson thus bears the burden of showing that Deputy Wallace is not entitled to qualified immunity. But he fails to meet this burden because he has not shown that he suffered a violation of a constitutional right.

The district court concluded that Friedson failed to show that his Fourth Amendment rights were violated because Deputy Wallace had probable cause to arrest Friedson for his traffic violation. Deputy Wallace contends that two additional grounds exist for concluding that no Fourth Amendment violation occurred: (1) he had probable cause to arrest Friedson for violating a different Florida statute that makes it a criminal offense to "resist, obstruct, or oppose any officer"; and (2) he had reasonable suspicion to detain Friedson because he appeared to pose a potential safety threat after failing to remain in his vehicle. *See* Fla. Stat. § 843.02.

On appeal, Friedson vigorously contests Deputy Wallace's alternative contentions in support of the judgment below. But he raises no argument against the district court's actual finding that Deputy Wallace had probable cause to arrest him for his traffic violation. Because Friedson has failed to challenge the district court's finding, he has abandoned any argument against it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014); *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012).

Friedson also argues on appeal that Deputy Wallace violated his Fourth Amendment rights by detaining him for an unreasonable length of time. Such an allegation, if properly made, could have formed the basis of a § 1983 claim. But here it cannot. We review the district court's grant of summary judgment by assessing the record in light of Friedson's allegations as stated in his complaint, not as stated in later responses or motions. *See Miccosukee Tribe of Indians of Florida v. United States*, 716 F.3d 535, 559 (11th Cir. 2013). Friedson first raised this theory of liability in his motion to alter or amend the judgment—it did not appear in his amended complaint. We will not take up this new theory of liability now.

Because Friedson abandoned any argument against the district court's probable cause finding and did not allege an unreasonable time of detainment in his complaint, we affirm the district court's grant of summary judgment to Deputy Wallace on the § 1983 claim.

## B.

Next are the state-law false arrest claims against Deputy Wallace and Sheriff Shoar.  Under Florida law, a false arrest claim "requires the plaintiff to establish three elements: (1) an unlawful detention and deprivation of liberty against the plaintiff's will; (2) an unreasonable detention which is not warranted by the circumstances; and (3) an intentional detention." *Manners v. Cannella*, 891 F.3d 959, 975 (11th Cir. 2018) (quotation and brackets omitted).  A plaintiff cannot establish the first element if there is probable cause to arrest.  *Id.*  Actual probable cause bars Florida false arrest claims against both individual officers and municipal entities.  *See, e.g., id.*; *Crocker v. Beatty*, 995 F.3d 1232, 1245 (11th Cir. 2021).

The district court granted summary judgment for the state-law false arrest claims on the same ground as it did for the federal false arrest claim: Deputy Wallace had probable cause to arrest Friedson for his traffic violation.  The standard for probable cause is the same under Florida law and federal law.  *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998).  So again, because Friedson failed to challenge the district court's finding of probable cause, we deem any argument against it abandoned and affirm the district court's grant of summary judgment on these claims.

## C.

We turn now to the claims against Sheriff Shoar in his official capacity under the ADA and the RA.  Title II of the ADA

and Section 504 of the RA prohibit discrimination against an individual because of his disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a); *see Silva v. Baptist Health S. Florida, Inc.*, 856 F.3d 824, 830–31 (11th Cir. 2017). Friedson alleges that Deputy Wallace discriminated against him by not providing him with a necessary interpretive aid and that Sheriff Shoar is liable for damages resulting from Deputy Wallace's discrimination.

Friedson contends that Sheriff Shoar should be vicariously liable for Deputy Wallace's statutory violations. This Circuit has not decided whether vicarious liability applies for ADA and RA violations. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 n.6 (11th Cir. 2019). But even assuming that vicarious liability is available under both Acts, and that Sheriff Shoar is thus a proper defendant, Friedson would also have to show that he otherwise has a claim.

To establish a claim for damages under either Act, Friedson must prove discriminatory intent, which can be established by a showing of deliberate indifference. *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146–47 (11th Cir. 2014). Deliberate indifference is an "exacting standard" that "plainly requires more than gross negligence." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012) (quotation omitted). As we have described in another context, the deliberate indifference standard is "far more onerous than normal tort-based standards of conduct sounding in negligence, and is in fact akin to subjective recklessness as used in the criminal law." *Hoffer v.*

*Sec'y, Florida Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (quotations omitted).

Friedson faces a difficult burden. For the denial of an interpretive aid to amount to deliberate indifference, Friedson must show that Deputy Wallace (1) knew there was a "substantial likelihood" that he would be unable to communicate effectively with Friedson absent any interpretive aid, and (2) nevertheless made a "deliberate choice" not to provide that aid. *See McCullum*, 768 F.3d at 1147–48 (quotation omitted). Even construing the facts in the light most favorable to Friedson, we do not see sufficient evidence to make the required showings.

*First*, there is no genuine issue of material fact about whether Deputy Wallace knew that it was substantially likely that the methods of communication he used would be ineffective and that it would be necessary to provide an interpretive aid to communicate effectively. Friedson argues that Deputy Wallace must have known that they were unable to communicate effectively without an interpretive aid because of the "colossal misunderstanding" between the two of them when Friedson thought they had agreed to move to a second location and Deputy Wallace assumed that Friedson was trying to flee. Because we construe the facts in the light most favorable to Friedson, we will presume that this misunderstanding between him and the deputy existed. But Friedson does not show that Deputy Wallace ever realized that he had misunderstood Friedson—that he had been mistaken in his belief that Friedson was trying to flee. Friedson

argues only that Deputy Wallace must have understood, based on Friedson's efforts to communicate using "unconventional" methods, that Friedson was *deaf*, because Deputy Wallace "cited no belief" that Friedson "was demonstrating signs of impairment or mental derangement."

This falls short of satisfying the knowledge requirement of our deliberate indifference doctrine. Friedson must show not only that the deputy had knowledge of Friedson's *deafness*, but that the deputy knew it was substantially likely that they would be unable to communicate effectively without an interpretive aid. And even if Deputy Wallace *had* realized that they had miscommunicated and that Friedson had not been trying to flee, that fact alone could not support an inference that Deputy Wallace knew there was a substantial likelihood that they would be unable to communicate effectively going forward.

As it turns out, during the second traffic stop, Friedson and Deputy Wallace *did* communicate effectively—though not perfectly—using gestures. Deputy Wallace first ordered Friedson to return to his vehicle, and later ordered him to exit his vehicle. Friedson complied with both orders, understanding the commands even though Deputy Wallace communicated through gestures. As Friedson expected when he drove away from the first stop, his ex-wife and children were present at the second stop. Friedson's ex-wife communicated to Friedson during the stop using gestures, and there is no evidence that his ex-wife or children expressed to Deputy Wallace that he was not communicating effectively with

Friedson.  We see no evidence that Deputy Wallace knew that it was necessary to provide an interpretive aid.

The circumstances at the second stop are analogous to those in *McCullum v. Orlando Regional Healthcare System, Inc.*, where we found insufficient evidence of deliberate indifference to ward off summary judgment in the healthcare context.  *Id.* at 1147–49.  There, a deaf patient indicated that he understood the hospital employees' communications, and neither the patient nor his family did anything to dispel the employees' belief that they were communicating effectively.  *See id.*  We reach the same conclusion here that we did in that case—there is insufficient evidence of the requisite knowledge for deliberate indifference.

*Second*, there is no genuine issue of material fact about whether Deputy Wallace made a "deliberate choice" not to provide Friedson with an interpretive aid.  Based on Friedson's version of events, after he initially gestured that he and Deputy Wallace should communicate by writing back and forth, he then gestured for Deputy Wallace to follow him to the second location, where his ex-wife and children were waiting and could interpret for them.  Deputy Wallace did follow him there, and there is no evidence that Deputy Wallace impeded Friedson's ex-wife or children from interpreting.

Our cases have already established that the failure to provide a requested interpretive aid is "not enough to support a finding of deliberate indifference."  *Id.* at 1147; *see Liese*, 701 F.3d at 343.  Federal regulations under the ADA state that public entities "shall

furnish appropriate auxiliary aids and services where necessary" to afford equal opportunity to individuals with disabilities. 28 C.F.R. § 35.160(b)(1). The regulations further explain that the "type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." *Id.* § 35.160(b)(2). And while public entities "shall give primary consideration to the requests of individuals with disabilities," they need not provide "any and all auxiliary aids even if they are desired and demanded." *Id.*; *McCullum*, 768 F.3d at 1147. Friedson has offered no evidence that writing back and forth was necessary beyond the fact that he requested to do so; a mere request is insufficient justification.

This case is a far cry from *Liese v. Indian River County Hospital District*, where, again in the healthcare context, we concluded that a disabled patient's testimony that the doctor had mocked her when she told him that her ability to read lips was limited and ignored her multiple requests for an interpreter was sufficient evidence to support a finding of deliberate indifference. 701 F.3d at 351. We have been unable to find any case in which this Court has found that the failure to provide an interpreter during a high-pressure, chaotic traffic stop amounts to deliberate indifference. We are especially reluctant to wade into these unprecedented waters where interpretive assistance by family members was readily available and evidently unimpeded.

14                    Opinion of the Court                    20-14803

Because no genuine issue of material fact exists over whether Deputy Wallace acted with deliberate indifference, we affirm the district court's grant of summary judgment in favor of Sheriff Shoar on Friedson's ADA and RA claims.

## IV.

Finally, we review the district court's denial of Friedson's motion to alter or amend the judgment. District courts may only grant a Rule 59(e) motion based on "newly-discovered evidence or manifest errors of law or fact." *Arthur*, 500 F.3d at 1343 (quotation omitted). Parties may not use a Rule 59(e) motion to "relitigate old matters" or raise new arguments "that could have been raised prior to the entry of judgment." *Id.* (quotation omitted).

Friedson has not shown that the district court abused its discretion by denying his Rule 59(e) motion. To the extent that Friedson presented any arguments not already included in his response to the officers' summary judgment motions—including his new theory that Deputy Wallace committed a Fourth Amendment violation by detaining him for an impermissible duration—he showed no reason why he could not have raised those arguments before the district court's decision on the motions. And he did not point to any manifest errors of law or fact in the district court's order. The district court correctly denied Friedson's Rule 59(e) motion.

★    ★    ★

For the reasons stated above, we **AFFIRM**.