[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11428

_____

MICHAEL BAXTER,

Plaintiff-Appellant,

*versus*

LOUIS ROBERTS, III,
TREVOR LEE,
Deputy,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:19-cv-00216-MCR-MJF

_____

Before WILSON, BRANCH, and TJOFLAT, Circuit Judges.

BRANCH, Circuit Judge:

This is an appeal from summary judgment in a civil rights case arising from a traffic stop and arrest that took place in Northwest Florida on December 24, 2017. On that day, Michael Baxter was pulled over by Deputy Trevor Lee of the Jackson County Sheriff's Office for erratic driving. During the stop, Deputy Lee noticed an open container of beer and decided to issue a warning citation. Deputy Lee wrote—but never delivered—the ticket. Instead, a few minutes into the stop, he ordered Baxter out of the truck so he could walk his drug-sniffing dog around the vehicle. The encounter escalated. Baxter resisted Deputy Lee's commands verbally and then physically. Once Baxter exited the truck, Deputy Lee arrested him for obstruction. Baxter suffered minor injuries. His truck was searched, but no drugs were found. The obstruction charge was later dismissed.

A couple years after this encounter, Baxter filed claims against Deputy Lee and the Jackson County Sheriff under 42 U.S.C. § 1983 and Florida common law. In his § 1983 claims against Deputy Lee, Baxter asserted that Deputy Lee violated his Fourth Amendment rights in four ways. Baxter alleged that Deputy Lee (1) initiated the traffic stop without justification; (2) unlawfully prolonged the stop to conduct a dog sniff for the presence of drugs; (3) arrested him for obstruction without probable cause; and (4)

used excessive force in arresting him.  Under a *Monell*[1] theory of liability, Baxter asserted that the Jackson County Sheriff was also responsible for the constitutional violations he endured.  In his state law claims, Baxter asserted false imprisonment and battery against Deputy Lee personally and the sheriff vicariously.

The district court granted the defendants summary judgment.  It held that Deputy Lee was entitled to qualified immunity on the § 1983 claims and otherwise found that Baxter's claims lacked merit.  The district court got it mostly right—but not entirely.  One aspect of Baxter's § 1983 claims—whether Deputy Lee unlawfully prolonged the traffic stop—presents triable issues that preclude qualified immunity at the summary judgment stage.  The same is true for two aspects of Baxter's false imprisonment claim.  In all other respects, the district court was correct.

Accordingly, after careful review and with the benefit of oral argument, we affirm in part, vacate in part, and remand.

## I.    Background

### A.   Facts[2]

On December 24, 2017, Michael Baxter stopped at a convenience store in Northwest Florida to buy gas and a beer.

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[2] At summary judgment, we recite the facts in the light most favorable to Baxter. *See Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020). However, we credit objective record evidence over Baxter's account when the

4                    Opinion of the Court                    21-11428

After leaving the store, Baxter cracked open the beer, placed it in the cupholder, and kept driving. Around that time, Jackson County Sheriff's Deputy Trevor Lee—who was on patrol in his K9 unit squad car—noticed Baxter's truck. Baxter's driving caught Deputy Lee's attention because he was swerving and weaving within his lane of traffic.[3] Deputy Lee followed Baxter and pulled him over after he continued to swerve and weave.

After Baxter pulled over, Deputy Lee exited his squad car and approached the passenger side of Baxter's truck.[4] Deputy Lee informed Baxter that he had been "all over the road" and asked if he was okay. Baxter responded that he had been "trying to make a phone call." Deputy Lee asked Baxter for his license, insurance, and registration. Baxter told Deputy Lee he "didn't know" he had been "all over the road."

At this point, Deputy Lee noticed the cracked beer can in the cupholder and told Baxter he could not have the open container in

---

two are squarely contradictory. *See Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018).

[3] Baxter claims that he was driving slowly and carefully when Deputy Lee pulled him over. Baxter's description, however, is in direct conflict with objective record evidence that confirms he was distracted and driving erratically.

[4] Deputy Lee's bodycam depicts the visual and auditory events of the stop from this point forward in clear detail.

21-11428               Opinion of the Court                    5

the vehicle.[5]  Meanwhile, Baxter handed over his license, but was struggling to find his insurance and registration.  Deputy Lee told Baxter that he would let him "work on that," and returned to his squad car.  He called dispatch to run a records check.

Deputy Lee then returned to the passenger side of Baxter's truck.  Baxter handed over his insurance card.  He kept searching for his registration, but said he "d[idn't] know where [he] could see it."  Deputy Lee told Baxter to "hang tight" as he was going to write a warning ticket and then "walk my dog around the car."  Deputy Lee went back to his car and typed up what appeared to be a warning ticket for Baxter's open container violation.

Leaving the warning ticket up on his computer—but without printing or delivering it—Deputy Lee walked to the driver's side of Baxter's truck.  He instructed Baxter to "turn the truck off and step back here to me."  Baxter asked why he needed to exit the vehicle, and Deputy Lee explained that he planned to "walk[] the dog around the car" to sniff for drugs.  Baxter questioned Deputy Lee's "probable cause" to do so.  Deputy Lee asserted that he needed none.  For the next minute or so, Deputy Lee repeatedly asked Baxter to step out of the truck while Baxter repeatedly claimed that Deputy Lee had no justification for walking the dog around his vehicle.  Baxter eventually complied. He turned the truck off, took the key out, and stepped out.  Deputy

---

[5] In Florida, having an open container in a vehicle is a noncriminal traffic infraction.  *See* Fla. Stat. §§ 316.655, 316.1936(2)(a), 318.13(3).

Lee asked Baxter to hand over his keys, but Baxter said "they're my keys" and clutched them to his chest.

At that point, Deputy Lee decided to arrest Baxter for nonviolent obstruction.[6]  In conducting the arrest, Deputy Lee grabbed Baxter's arm, forced him to the ground, twisted his arm around, and placed him in handcuffs.  Baxter suffered a chipped tooth and facial abrasions.

Shortly after the arrest, a sergeant with the Jackson County Sheriff's Office arrived.  Baxter claims to have heard Deputy Lee tell the sergeant that he had to "charge [Baxter] with something" because he had "roughed him up."  A few minutes later, Deputy Lee walked his K9 around Baxter's truck.  The dog alerted, but Deputy Lee found no drugs inside Baxter's truck.

Baxter was charged with nonviolent obstruction and ticketed for the open container.  The obstruction charge was later dismissed.  According to Baxter, after the December 24, 2017 incident, Deputy Lee twice pulled his squad car up behind Baxter, turned his lights on as if to pull Baxter over, but then just "cruis[ed] on by."

---

[6] Fla. Stat. § 843.02 provides:

> Whoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree.

21-11428                    Opinion of the Court                    7

### B.   Procedural History

In July 2019, Baxter filed a civil rights complaint against Deputy Lee and the Jackson County Sheriff in which he asserted claims under 42 U.S.C. § 1983 and Florida common law.  In his § 1983 claims against Deputy Lee, Baxter alleged that Deputy Lee violated his Fourth Amendment rights in four distinct ways:  by (1) unlawfully initiating the traffic stop; (2) unlawfully prolonging the traffic stop; (3) arresting him without probable cause; and (4) using excessive force during the arrest.  Baxter also asserted *Monell* claims against the Jackson County Sheriff in which he alleged that the sheriff was responsible for the constitutional injuries he allegedly suffered.[7]  Finally, Baxter asserted common law tort claims for false imprisonment and battery against both Deputy Lee personally and the sheriff vicariously.

Following discovery, the defendants filed motions for summary judgment.  In their respective motions, the defendants argued that all of Baxter's claims lacked merit.  Deputy Lee also asserted immunity defenses—qualified immunity with respect to the § 1983 claims and statutory immunity under Florida law with respect to the state law claims.

---

[7] Baxter's claims against the Jackson County Sheriff in his official capacity were "effectively an action against the governmental entity [the sheriff] represents," *i.e.*, the Jackson County Sheriff's Office.  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005).

After the defendants moved for summary judgment, but before Baxter responded, Baxter took the witness statement of a former Jackson County Sheriff's Deputy. In that statement, Cory Finch—who was Deputy Lee's former supervisor—testified that he raised concerns about Deputy Lee conducting traffic stops without probable cause, but that, to his knowledge, no remedial action was taken by the sheriff's office. Baxter attached Finch's witness statement to his response to the defendants' motions for summary judgment. The defendants moved to strike Finch's statement from the summary judgment record because Baxter had not disclosed Finch as a potential witness prior to the close of discovery.

The district court granted the defendants' motions for summary judgment and their motion to strike Finch's statement. In granting the motion to strike, the district court found that Baxter had failed to timely disclose Finch as a potential witness and that the failure was neither justified nor harmless. In granting summary judgment, the district court found that Baxter failed to raise a genuine dispute of material fact as to whether Deputy Lee violated his constitutional rights during the December 2017 traffic stop and arrest. As such, Deputy Lee was entitled to qualified immunity as to the § 1983 claims against him. Because it found that Baxter had failed to raise a genuine dispute of material fact as to whether Deputy Lee violated his constitutional rights, the district court found that Baxter's state law tort claims against both Deputy Lee and the Jackson County Sheriff also lacked merit. Finally, the

district court granted summary judgment in the sheriff's favor on the *Monell* claims.

The district court entered judgment and Baxter timely appealed.

## II.   Standard of Review

We review the district court's grant of summary judgment de novo. *Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018). Summary judgment is proper where the evidence "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994). To defeat summary judgment, "a mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (quotation omitted and alteration adopted).

At the summary judgment stage, "we view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of the non-movant." *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020). But we do so only "to the extent supportable by the record." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis omitted). "When opposing parties

tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. Thus, "in cases where a video in evidence obviously contradicts the nonmovant's version of the facts, we accept the video's depiction instead of the nonmovant's account and view the facts in the light depicted by the videotape." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citations and quotations omitted and alterations adopted).

## III.  Discussion

In this appeal from summary judgment, Baxter raises numerous challenges pertaining to both his federal and state law claims. We agree with the district court's decision to grant summary judgment as to most—but not all—of Baxter's claims. Accordingly, we affirm in part and vacate in part.

We proceed as follows. First, we address a threshold evidentiary issue: the exclusion of Cory Finch's witness statement. We conclude that the district court did not abuse its discretion.

Second, we evaluate Baxter's § 1983 claims against Deputy Lee, which relate to four distinct aspects of Baxter's encounter with Deputy Lee: (1) Deputy Lee's decision to pull Baxter over; (2) the stop's duration; (3) Deputy Lee's decision to arrest Baxter; and (4) Deputy Lee's use of force during the arrest. We conclude that Deputy Lee is entitled to qualified immunity with respect to the

first, third, and fourth issues. The second issue, however—relating to the permissible duration of the traffic stop—raises a triable issue for which qualified immunity is not justified at this stage.

Third, we consider Baxter's *Monell* claims against the Jackson County Sheriff. We conclude that the district court correctly granted summary judgment.

Finally, we address Baxter's state law claims against Deputy Lee and the sheriff for false imprisonment and battery. We conclude that one of Baxter's state law claims raises triable issues that preclude summary judgment—in particular, the false imprisonment claim relating to the traffic stop's duration and Deputy Lee's decision to arrest Baxter. The remainder of the state law claims were correctly dismissed at summary judgment.

## A. Exclusion of Cory Finch's Witness Statement

Baxter argues that the district court erred in excluding Cory Finch's witness statement from the summary judgment record. The district court struck his statement because Finch was not disclosed as a potential witness during discovery and Baxter obtained his statement after the close of discovery. For the reasons below, we find that the district court did not abuse its discretion.

We start with the discovery rules. Federal Rule of Civil Procedure 26 prescribes when and how parties must disclose potential witnesses. Rule 26(a) requires initial disclosures, including the names of "individual[s] likely to have discoverable information" that the disclosing party may use to support its case.

*See* Fed. R. Civ. P. 26(a)(1)(A)(i).  Rule 26(e) directs parties to supplement their initial disclosures if they learn that material information was left out.  *See* Fed. R. Civ. P. 26(e).  Failure to comply is penalized:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).

In this case, Baxter included several potential witnesses in his initial disclosures—but not Finch.  When discovery closed, Baxter still had not disclosed Finch as a potential witness. Nonetheless, Baxter's counsel took Finch's witness statement a few weeks later and included the statement as an exhibit at summary judgment.  The defendants moved to strike, and following Rule 37, the district court excluded Finch's statement.

We review the district court's decision to strike the witness statement for abuse of discretion.  *See Evans v. Books-A-Million*, 762 F.3d 1288, 1295 (11th Cir. 2014).  Three factors inform our review: "[1] the explanation for the failure to disclose the witness, [2] the importance of the testimony, and [3] the prejudice to the opposing party if the witness had been allowed to testify." *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008) (alteration adopted) (quoting *Fabrica Italiana Lavorazione Materie Organiche*,

21-11428                Opinion of the Court                13

*S.A.S. v. Kaiser Aluminum & Chem. Corp.*, 684 F.2d 776, 780 (11th Cir. 1982)).  Each factor supports the district court's decision.

First, we consider the explanation for the failure to disclose. *Id.* Baxter asserts that his failure to disclose was excusable because, while Finch was not disclosed in *this* case, he *was* disclosed in a series of other § 1983 suits—brought by different plaintiffs and involving claims against a different deputy (Zach Wester)—in the same district court.  We are not convinced.  To state the obvious, disclosing a witness in one case does not provide notice that the witness might be used in a different case.

Baxter claims this is a special notice situation because his case was "consolidated" with the Wester cases.  The record, however, shows that when the district court suggested such consolidation, Baxter and Deputy Lee jointly represented that the "underlying facts alleged by [Baxter] are unrelated and separate" from those other matters.  Simply put, Baxter's explanation is contradicted by the record.

Second, we consider "the importance of the testimony." *Id.* Our assessment is that Finch's statement would not have had much, if any, relevance at summary judgment.  In the excluded statement, Finch—who formerly supervised Deputy Lee—testified that he had raised concerns to his boss about Deputy Lee conducting traffic stops without probable cause and requested that a dashcam be placed in Deputy Lee's squad car, but that, to his knowledge, the sheriff's office never investigated the traffic stops nor installed the dashcams.  Notably, however, Finch's testimony

did not address the December 2017 encounter between Baxter and Deputy Lee and would have had no bearing on the analysis of whether Deputy Lee violated Baxter's constitutional rights during that incident.[8]

Third, we consider "the prejudice to the opposing party if the witness had been allowed to testify." *Id.* The prejudice is clear. The defendants should have had the opportunity to depose Finch with fair notice that Baxter might use him as a witness and to develop other record evidence to rebut his assertions. Baxter's failure to follow Rule 26 robbed the defendants of that chance. Exclusion was the appropriate remedy. *See, e.g., R.M.R. ex rel. P.A.L. v. Muscogee Cnty. Sch. Dist.*, 165 F.3d 812, 813, 818–19 (11th Cir. 1999) (affirming exclusion of "last-minute witness" at trial where allowing witness to testify would have "den[ied]

---

[8] Finch's testimony could have potentially had some significance for Baxter's *Monell* claim in which he asserted that the sheriff "exhibit[ed] deliberate indifference to constitutional deprivations caused by [Deputy Lee]." But even if we assume that Finch's testimony would have strengthened Baxter's showing at summary judgment on the *Monell* claim, we would still affirm the district court's decision to exclude the statement given the lack of justification for failing to disclose Finch as a witness and the prejudice allowing the statement would have caused the defendants. *See Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004) ("Regardless of the importance of [the] testimony, the reasons for the delay in the . . . disclosure and the consequent prejudice that [the] testimony would have caused [the defendants] require us to affirm the district court's ruling.").

[defendant] the opportunity to depose him and prepare cross-examination" and resulted in "extreme prejudice").

The district court did not abuse its discretion in excluding Finch's witness statement from the summary judgment record. We affirm that determination.

### B.   Section 1983 Claims Against Deputy Lee

In his § 1983 claims, Baxter asserted that Deputy Lee violated his Fourth Amendment rights in four distinct ways during the December 2017 traffic stop: (1) Deputy Lee's decision to initiate the traffic stop; (2) the stop's duration; (3) Deputy Lee's decision to arrest Baxter; and (4) Deputy Lee's use of force during the arrest. The district court found that Deputy Lee was entitled to qualified immunity on each issue and granted summary judgment. Baxter challenges those determinations on appeal.

We begin with the standard for qualified immunity: "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This is a two-part test. First, we consider whether the plaintiff can "establish a constitutional violation." *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010). Then, "[i]f the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated," we consider "whether the

right violated was 'clearly established.'" *Id.* The plaintiff bears the burden at both steps. *Spencer v. Benison*, 5 F.4th 1222, 1230 (11th Cir. 2021). Finally, "[e]ntitlement to qualified immunity is for the court to decide as a matter of law." *Simmons*, 879 F.3d at 1163. But if, "at the summary judgment stage, the evidence construed in the light most favorable to the plaintiff shows that there are facts inconsistent with granting qualified immunity, then the case and the qualified immunity defense proceed to trial." *Stryker*, 978 F.3d at 773.

As we will explain, we affirm the district court's grant of summary judgment as to Deputy Lee's decisions to initiate the traffic stop, arrest Baxter, and use permissible force. Deputy Lee was entitled to qualified immunity on these issues. However, we vacate the grant of summary judgment as to Deputy Lee's extension of the traffic stop. There are genuine disputes of material fact about whether Deputy Lee unlawfully prolonged the traffic stop that preclude qualified immunity on that issue at this stage.

### 1.   Initial Traffic Stop

Baxter argues that the December 2017 traffic stop was unlawful under the Fourth Amendment. We disagree.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop "constitute[s] a 'seizure' within the meaning" of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). A traffic stop is constitutional if the officer had reasonable suspicion

21-11428　　　　　Opinion of the Court　　　　　17

to believe that criminal activity has occurred, is occurring, or is about to occur. *United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022) (en banc). "In other words, an officer making a stop must have a particularized and objective basis for suspecting the person stopped of criminal activity." *Id.* (quotation omitted). "Even minor traffic violations qualify as criminal activity."[9] *Id.*

We must determine whether there is a genuine dispute of material fact concerning Baxter's driving on the evening of December 24, 2017, and whether it gave Deputy Lee reason to suspect that Baxter committed a traffic violation which would justify the traffic stop. The relevant traffic regulation is supplied by Florida law:

> A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved

---

[9] We have sometimes indicated that probable cause, rather than reasonable suspicion, is necessary to justify a traffic stop in which the reason for the stop is a potential traffic violation rather than suspicion of other criminal activity. *See, e.g.*, *United States v. Gibbs*, 917 F.3d 1289, 1294 (11th Cir. 2019) (stating that "a police officer generally may lawfully detain an individual without a warrant if (1) there is probable cause to believe that a traffic violation has occurred (a traffic stop), or (2) there is reasonable suspicion to believe the individual has engaged or is about to engage in criminal activity (an investigative or *Terry* stop)"). But in our recent en banc opinion in *Campbell*, we clarified that "reasonable suspicion is all that is required" to justify any type of traffic stop. 26 F.4th at 880 n.15 (citing *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)).

from such lane until the driver has first ascertained
that such movement can be made with safety.

*Id.* § 316.089(1). Florida courts have made clear that a careless, unusual, or erratic driving pattern within a single lane of traffic may violate this provision. *See, e.g.*, *Yanes v. State*, 877 So. 2d 25, 26–27 (Fla. 5th DCA 2004) (stating that "deviat[ing] from [one's] lane by more than what [is] practicable . . . is a violation of [§ 316.089(1)], irrespective of whether anyone is endangered"); *Roberts v. State*, 732 So. 2d 1127, 1128 (Fla. 4th DCA 1999) (holding that a driver's "continuous weaving, even if only within her lane" justified a traffic stop under § 316.089(1)). On the other hand, "[t]he failure to maintain a single lane alone" is not unlawful in Florida "when the action is done safely." *Hurd v. State*, 958 So. 2d 600, 603 (Fla. 4th DCA 2007).

We begin with Deputy Lee's incident report—prepared shortly after the stop—in which he memorialized what he observed before pulling Baxter over. In the incident report, Deputy Lee stated that he initially "observed [Baxter's] blue in color pickup truck . . . swerving from left to right striking the white fog line and yellow center line multiple times while traveling northbound on [the highway]." "After observing the vehicle strike both the yellow line and white fog line several more times," Deputy Lee "conducted [the] traffic stop." Baxter's erratic driving justified the traffic stop because swerving and weaving is prohibited by Florida law. *See* Fla. Stat. § 316.089(1); *Roberts*, 732 So. 2d at 1128.

Seeking to raise a genuine dispute of material fact about whether he was in fact driving carelessly when Deputy Lee pulled him over, Baxter points to two pieces of record evidence—(1) his deposition testimony and (2) a declaration he submitted with his summary judgment response—in which he provided descriptions of his driving that differ from Deputy Lee's account in the incident report.  At his deposition, Baxter testified that, in the moments before Deputy Lee pulled him over, he "wasn't swerving and crossing lines," but had simply passed a slower-moving car while Deputy Lee was following him.  In his declaration, Baxter similarly testified that Deputy Lee pulled him over after he "signaled and changed lanes to pass a vehicle traveling well below the speed limit" and then "signaled again and returned to [his] correct lane."

The testimony Baxter cites directly conflicts with Deputy Lee's description of his driving.  Were this all the evidence we had to go on in the record—*i.e.*, the incident report on the one hand and the deposition and declaration testimony on the other—we might very well have a genuine dispute of material fact about whether Baxter was driving carelessly.  In that situation, the record would present a swearing match that could not be resolved at summary judgment.  *See, e.g.*, *Stryker*, 978 F.3d at 775 n.2, 776–77 (reversing grant of summary judgment where parties testified to "competing versions" of defendant officer's use of force during arrest and there was no video recording of the incident).

In this case, however, we also have the footage from Deputy Lee's bodycam,[10] which at summary judgment we preference to the extent it squarely conflicts with Baxter's testimonial descriptions. *See Scott*, 550 U.S. at 380 (noting that "a court should not adopt" a party's description of the facts at summary judgment if it "is blatantly contracted" by objective evidence in the record, such as a video recording). On the video, we observe Deputy Lee approach the passenger side of Baxter's truck and tell Baxter that he was "just all over the road." Without hesitation, Baxter responds: "I was trying to make a phone call." A few seconds later, Deputy Lee goes on to describe the length of time he had observed Baxter driving erratically—"from Highway 90 at 71 North near CVS all the way to here"—to which Baxter's response is simply "Okay."[11] The meaning of this dialogue is plain: confronted with a description of his careless driving, Baxter accepted that description

---

[10] The video does not show Baxter driving, but it does depict a critical exchange between Baxter and Deputy Lee immediately after the traffic stop.

[11] The bodycam video also shows Baxter telling Deputy Lee that he "didn't know [he] was all over the road." In context, we do not think this challenge to Deputy Lee's account of Baxter's driving gives rise to a genuine dispute of material fact because Baxter's assertion that he "didn't know [he] was all over the road" does not mean that he was not, in fact, all over the road. Further, Baxter offered an excuse ("trying to make a phone call") which is a tacit admission that he knew he was driving erratically. *See Bailey v. Metro Ambulance Servs. Inc.*, 992 F.3d 1265, 1279 (11th Cir. 2021) ("When a party later contradicts his own statements of record without any valid explanation for that contradiction, that party fails to raise a genuine dispute of fact.").

and offered an excuse.  Ultimately, because Baxter's statement that he had been "trying to make a phone call" contradicts his later deposition testimony that he "wasn't swerving and crossing lines" and had only cautiously passed a slower-moving car, we view the facts in the light depicted by the bodycam video.[12]  *See Shaw*, 884 F.3d at 1098.

Baxter counters that his "phone call" statement to Deputy Lee is not actually in conflict with his later testimony that he was driving safely.  But he offers no colorable explanation as to how his "trying to make a phone call" remark could have been anything other than an acknowledgement of and justification for his distracted driving.  At summary judgment, to be sure, we draw "all reasonable factual inferences" in the nonmovant's favor.  *Stryker*, 978 F.3d at 773.  But "[e]ven in the summary judgment context, we are not required to accept *any* interpretation of testimony by the

---

[12] We have repeatedly applied this preferencing rule in affirming summary judgment based on objective evidence notwithstanding the presence of some contradictory testimony from the nonmovant elsewhere in the record.  *See, e.g.*, *Fish v. Brown*, 838 F.3d 1153, 1165–66 & n.41 (11th Cir. 2016) (affirming grant of summary judgment with respect to Fourth Amendment challenge to legality of officers' entry into plaintiff's residence where plaintiff "denie[d] that he gave verbal consent before the deputies entered his home," but where "audio statements recorded . . . by the dash camera mounted on [an officer's] cruiser establish[ed] that he did so" (emphasis omitted)); *Singletary v. Vargas*, 804 F.3d 1174, 1182–83 (11th Cir. 2015) (reversing denial of officer's motion for qualified immunity in Fourth Amendment excessive force case where plaintiff's testimony that officer unnecessarily fired shots into a car while it was not moving was "conclusively rebut[ted]" by "surveillance video").

non-movant." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1278 n.6 (11th Cir. 2002) (emphasis added).  A nonmovant who wants us to interpret the record in a way that would preclude summary judgment must explain how such an interpretation is reasonable.  Baxter has not done so.

Putting Baxter's "after the fact" testimony to one side, the remaining relevant evidence in the record—*i.e.*, Deputy Lee's incident report and the bodycam video—points to only one reasonable conclusion: Baxter was on his cell phone, distracted at the wheel, and driving erratically when Deputy Lee pulled him over on December 24, 2017.  Baxter's careless driving provided Deputy Lee with the necessary reasonable suspicion to justify the stop.  Accordingly, there is no genuine dispute of material fact as to whether Deputy Lee violated Baxter's Fourth Amendment rights in initiating the stop.  He clearly did not.[13]  We affirm the district court's grant of summary judgment on this issue.

---

[13] Because we find that there is no genuine dispute of material fact as to whether Deputy Lee violated Baxter's constitutional rights in initiating the traffic stop, we do not reach the second step of the qualified immunity analysis (whether Deputy Lee violated a clearly established constitutional right). *See Grider*, 618 F.3d at 1254 (noting that "[b]oth elements of [the qualified immunity] test must be satisfied for an official to lose," and that the two-part analysis "may be done in whatever order is [] most appropriate").

### 2.  Stop Duration

Baxter argues that by ordering him out of the truck to conduct a dog sniff around the vehicle, Deputy Lee prolonged the December 2017 traffic stop in violation of his Fourth Amendment rights.  On this point, we agree with Baxter.

The Fourth Amendment imposes limits on the permissible duration of traffic stops.  Police executing a traffic stop "do not have unfettered authority to detain a person indefinitely," *Campbell*, 26 F.4th at 881, and "[a] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015).  That is, under the Fourth Amendment, a traffic stop "become[s] unlawful if it is prolonged beyond the time reasonably required to complete [its] mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).  In *Rodriguez*—the Supreme Court's key precedent on  traffic stop duration—the Court stated that a stop's legitimate mission has two components: (1) "address[ing] the traffic violation" and (2) "attend[ing] to related safety concerns."  575 U.S. at 354.  The latter category—"related safety concerns"—includes a traditional set of "ordinary inquiries incident to the traffic stop": *i.e.*, "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355 (quotation omitted and alteration adopted).  These checks are part of the stop's mission because they "serve the

same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.*

By contrast, there are other activities that are *not* part of a traffic stop's legitimate mission. In particular, an "unrelated criminal investigation" that lacks "the reasonable suspicion ordinarily demanded to justify detaining an individual"—such as a dog sniff conducted without a particularized basis to suspect illicit drug activity—is beyond the traffic stop's mission. *Id.* at 355–57; *see also id.* at 356 (noting that "a dog sniff is not fairly characterized as part of [an] officer's traffic mission"). To be clear, an officer is free to undertake activities unrelated to the traffic stop's mission *during* the stop's already-permissible duration. *See id.* at 354 (noting that "the Fourth Amendment tolerate[s] certain unrelated investigations that d[o] not lengthen the roadside detention"). But the officer "may not . . . prolong the stop." *Id.* at 355.

The permissible length of a traffic stop is the time "reasonably required" to complete its core tasks. *Id.* at 354–55. "Authority for the seizure thus ends when [the] tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 354. Unrelated "detours" that extend the stop beyond that point violate the Fourth Amendment. *Id.* at 356–57.

We now examine the traffic stop within our two-step qualified immunity analysis.

The first step is whether Baxter can "establish a constitutional violation." *Grider*, 618 F.3d at 1254. We find that

21-11428                Opinion of the Court                25

there is a genuine dispute of material fact about whether Deputy Lee violated the Fourth Amendment by extending the December 2017 traffic stop beyond the time "reasonably required" to complete its mission. *Rodriguez*, 575 U.S. at 354–55.

The material facts are almost—but not entirely—undisputed. On Deputy Lee's bodycam video, we observe Deputy Lee approach Baxter's truck at the outset of the traffic stop. He informs Baxter that he was "all over the road" and asks for Baxter's license, registration, and insurance. Baxter hands over his license and starts looking for the other documents. While Baxter is rooting through his papers, Deputy Lee notices Baxter's open beer can and tells Baxter he "can't have it in the car." He then tells Baxter, "I'll let you work on that"—*i.e.*, Baxter's search for his registration and insurance—and returns to his squad car, where he calls dispatch and runs a records check.

Deputy Lee then returns to Baxter's truck, by which time Baxter has located his insurance card but not his vehicle registration. Baxter hands over the insurance card and tells Deputy Lee, "My truck's registered but I just don't know where I can see it." After a brief back-and-forth about Baxter's travel plans, Deputy Lee tells Baxter to "just hang tight—I'm gonna write you a warning ticket and then I'm gonna walk my dog around the car." Returning to his squad car, Deputy Lee proceeds to type something on his computer—presumably, the warning ticket.

Deputy Lee does not print the ticket. Instead, he returns to Baxter's truck and instructs Baxter to "turn the truck off and step back here to me." This conversation ensues:

> **Baxter**: "I thought you was giving me a warning?"
>
> **Deputy Lee**: "I am giving you a warning citation."
>
> **Baxter**: "Why do I have to get out of the vehicle?"
>
> **Deputy Lee**: "I'm walking the dog around the car to conduct a free-air sniff to the odor of narcotics."

Deputy Lee repeatedly orders Baxter to step out and Baxter repeatedly resists. Ultimately, Deputy Lee arrests Baxter.

We recognize five tasks within this stop's legitimate mission: (1) issuing a warning ticket; (2) running a check for outstanding warrants; (3) checking Baxter's license; (4) checking insurance; and (5) checking registration. *See id.* at 354–55 (noting that a traffic stop's mission includes "address[ing] the traffic violation" as well as performing these "ordinary inquiries incident to the traffic stop"). Deputy Lee, however, undertook additional actions that were unrelated to the purpose of the traffic stop and therefore not part of its "mission." *Id.* For one, conducting a dog sniff to search for drugs was not part of the traffic stop's mission. Deputy Lee does not dispute that a dog sniff is a "measure aimed to detecting evidence of [] criminal wrongdoing" that is "not an ordinary

21-11428                Opinion of the Court                27

incident of a traffic stop."[14]  *Id.* at 355–56 (quotation omitted and alteration adopted).  Further, Deputy Lee's related order for Baxter to step out of his truck *so that he could conduct the dog sniff* was not part of the traffic stop's mission.  It is clear from the bodycam video—or at the very least, a reasonable jury could certainly find—that Deputy Lee interrupted his ticket-writing process, returned to Baxter's truck, and ordered Baxter to get out of the vehicle to ensure officer safety while he walked the dog around the car.  Thus, Deputy Lee's order for Baxter to exit the vehicle is squarely a "safety precaution[] taken in order to facilitate [] detours" which are decidedly *not* part of a traffic stop's baseline mission.[15]  *Id.* at 356.  Because neither the dog sniff nor the order for Baxter to exit his vehicle were part of the traffic stop's mission, those actions were justified *only if* they occurred "during an otherwise lawful traffic stop" but did not add time to the stop.  *Id.* at 355, 357.

---

[14] In some instances, a dog sniff is based on reasonable suspicion of illicit drug activity—which presents an entirely different situation.

[15] At his deposition, Deputy Lee was asked whether "it [is] normal for [him] to pull somebody out of a car before [he] do[es] a K9 search," and he responded:

> [It] depends.  Sometimes . . . you have them step out or sometimes you leave them in the car and then just turn the vehicle off, like, for safety of me and the dog.  That's the main thing is . . . if they are out of the vehicle, you have somebody else there, you can have visual control of their hands, make sure you . . . and the dog don't get hurt.

This testimony supports the view that Deputy Lee ordered Baxter to get out of his truck as a safety precaution.

We think a reasonable jury could conclude that Deputy Lee's order to exit the truck came after the stop's mission either had or should have been completed. Three of the five core tasks were completed by this time: The license check occurred at the outset of the stop; the records check was handled shortly after; and the insurance check occurred once Baxter located his card. The fourth core task—issuing the warning citation—had not been completed, but it appears as if it *should have been*. The video clearly depicts Deputy Lee typing up the ticket but then, for reasons unknown, holding off on delivering it. Based on the video, a reasonable jury could find that the ticket should have been issued (even though it had not actually been issued) by the time Deputy Lee returned to Baxter's truck and ordered him out.

The status of the final core task—checking Baxter's registration—is less clear. The video does not definitively show whether Deputy Lee had completed that part of the traffic stop when he ordered Baxter to exit his vehicle. Baxter had not yet located his registration, but it appears that Deputy Lee had chosen to move on from the registration check.[16] Importantly, Deputy Lee tells Baxter to "just hang tight—I'm gonna write you a warning ticket" after Baxter said his truck was registered but he "just d[idn't] know where [he] could see it." Based on these statements, a

---

[16] In his incident report, Deputy Lee did not mention Baxter's inability to locate his registration. Rather, he wrote that he "retriev[ed] all the proper documentation" from Baxter before "inform[ing] him that a warning citation would be written."

reasonable jury could find that Deputy Lee had done all he planned to do with the registration check by the time he ordered Baxter to exit the vehicle.[17] And if Deputy Lee had done all he planned to do with the registration check, he was not authorized to prolong the stop beyond that point. *See Campbell*, 26 F.4th at 881 ("Even if the police have reasonable suspicion to make a traffic stop, they do not have unfettered authority to detain a person indefinitely."). In sum, we find that a reasonable jury could conclude that the five tasks comprising the stop's mission either had been or should have been completed by the time Deputy Lee ordered Baxter to exit his vehicle for the dog sniff.

Deputy Lee offers three explanations for why the stop was lawfully ongoing. Each is unpersuasive. First, Deputy Lee invokes *Pennsylvania v. Mimms*, 434 U.S. 106 (1977). In *Mimms*, the Supreme Court held that officers may "order all drivers out of their vehicles as a matter of course whenever they ha[ve] been stopped for a traffic violation." *Id.* at 110; *see also Maryland v. Wilson*, 519

---

[17] To be clear, we think a reasonable jury could also decide that the registration check *was* still ongoing at this point. Deputy Lee makes this point in his brief, asserting that, when he ordered Baxter to exit his vehicle, Baxter "was still in the process of locating his . . . registration, and in fact, based on the undisputed evidence . . . could not and did not locate his registration."

Whether the registration check was ongoing when Deputy Lee ordered Baxter to exit his truck, therefore, presents a genuine dispute of material fact for the jury to resolve. Viewing the relevant facts in the light most favorable to Baxter (as we must), we think a jury could find that the registration check had been dealt with and put aside by the time Deputy Lee returned to Baxter's truck.

U.S. 408, 410 (1997). *Mimms* imposes a per se rule: during a lawful traffic stop, an officer may order the driver out of the vehicle. *See Mimms*, 434 U.S. at 111 n.6; *Wilson*, 519 U.S. at 412, 413 n.1 (characterizing *Mimms* as "dr[awing] a bright line" and imposing a "*per se* rule"). But *Mimms* simply defines the actions available to an officer conducting an already-lawful stop. It does not allow an officer to extend a stop that should have already ended. *Cf. Mimms*, 434 U.S. at 111 n.6 ("[W]e do not hold today that 'whenever an officer has an occasion to speak with the driver of a vehicle, he may also order the driver out of the car.'"). To the contrary, in *Rodriguez*, the Supreme Court emphasized that "safety precautions taken in order to facilitate [unrelated] detours" are beyond a traffic stop's lawful scope. 575 U.S. at 356. In this case, a reasonable jury could conclude that Deputy Lee's order was just that—an impermissible extension taken to pursue an unjustified detour. As such, *Mimms* would not apply.

Second, Deputy Lee argues that the traffic stop was lawfully ongoing because he "observed an open container during the course of the traffic stop, which justif[ied] prolonging the traffic stop to sufficiently investigate." Deputy Lee, however, does not explain what further steps he could have taken. In Florida, having an open container in a vehicle is a noncriminal traffic infraction. *See* Fla. Stat. §§ 316.655, 316.1936(2)(a), 318.13(3). Deputy Lee addressed that infraction by citing Baxter. Even if there were other hypothetical actions that Deputy Lee could have taken, our analysis only considers the actions actually performed. *See*

*Rodriguez*, 575 U.S. at 357 (noting that "[t]he reasonableness of a seizure . . . depends on what the police in fact do," and that officer "diligence" during a traffic stop is "gauged . . . by noting what the officer actually did and how he did it"). A reasonable jury could conclude that the stop's mission was either complete or should have been completed at the time Deputy Lee ordered Baxter out of his car for the dog sniff despite Deputy Lee's observation of an open container in Baxter's vehicle.

Third, Deputy Lee argues that Baxter's "refusal to cooperate" is what prolonged the stop. While we agree that (1) a driver's obstruction justifies extending a lawful traffic stop to address the resisting conduct and (2) Baxter resisted Deputy Lee's order, any resistance in this case is immaterial to the stop duration analysis because Deputy Lee had already unlawfully prolonged the stop when Baxter resisted.

For the stated reasons, we find that there is a genuine dispute of material fact about whether Deputy Lee unlawfully prolonged the traffic stop in violation of Baxter's Fourth Amendment rights.

We next consider the "clearly established" prong of the qualified immunity analysis. *Grider*, 618 F.3d at 1254. Viewed in the light most favorable to Baxter,[18] we find that if Deputy Lee

---

[18] We continue to view the facts in the light most favorable to Baxter. *See Stryker*, 978 F.3d at 773; *Simmons*, 879 F.3d at 1163–64 ("If a government official moves for summary judgment asserting entitlement to qualified

unlawfully prolonged the stop, then he violated Baxter's clearly established constitutional rights.[19]

The touchstone of the "clearly established" analysis is notice. "[T]he dispositive question is whether the law at the time of the challenged conduct gave the government official fair warning that his conduct was unconstitutional." *Wade v. United States*, 13 F.4th 1217, 1225 (11th Cir. 2021). In other words, for a right to be clearly established, "in the light of pre-existing law," the "unlawfulness" of the officer's actions "must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A right may be clearly established in one of three ways: (1) "case law with indistinguishable facts clearly establishing the constitutional right"; (2) "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right"; or (3) "conduct so egregious that a constitutional right was clearly

---

immunity, then the relevant facts are construed in the light most favorable to the non-movant . . . .").

[19] The facts viewed in the light most favorable to Baxter are different than the facts a jury may ultimately find at trial. As such, qualified immunity remains an available defense for Deputy Lee at trial. *See Simmons*, 879 F.3d at 1164 (noting that, when a government official's motion for summary judgment on qualified immunity grounds is denied, the "qualified immunity defense remains intact and proceeds to trial," where "[t]he facts as viewed for summary judgment purposes are no longer binding, and the jury proceeds to find the relevant facts bearing on qualified immunity"). We only decide that Deputy Lee is not entitled to qualified immunity at the summary judgment stage on the stop duration issue.

violated, even in the total absence of case law." *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009).

Baxter appears to invoke the first method of demonstrating that his right was clearly established. In such cases, we have noted that the plaintiff must "point[] to a case, in existence at the time [of the incident], in which the Supreme Court or this Court found a violation based on materially similar facts." *Cantu v. City of Dothan*, 974 F.3d 1217, 1232 (11th Cir. 2020). The prior case "need not be directly on point," but it "must have placed the constitutional question beyond debate." *Wade*, 13 F.4th at 1226 (quotations omitted). The key question is "whether the factual scenario" that the official faced is "fairly distinguishable" from the circumstances facing the official in the first case. *Jones v. Fransen*, 857 F.3d 843, 852 (11th Cir. 2017) (quotation omitted). Or—put simply—whether the officer would know after reading prior case A that what he was doing in instant case B was against the law.[20] *See, e.g.*, *Bradley v. Benton*, 10 F.4th 1232, 1243 (11th Cir. 2021) (finding that, under facts viewed in the light most favorable to the nonmovant, an officer's use of a taser on an unarmed fleeing suspect who was on top of a wall, resulting in the suspect's death, was a violation of the suspect's clearly established Fourth Amendment right to be free from deadly force based on the

---

[20] To reiterate, "not every factual difference between cases is a material difference." *Vinyard v. Wilson*, 311 F.3d 1340, 1353 (11th Cir. 2002). A material difference, "is a difference that makes the precedent[] incapable of giving fair notice to the defendant government official." *Id.*

"materially similar precedent" of *Tennessee v. Garner*, 471 U.S. 1 (1985), even though in *Garner*, the officer used a gun rather than a taser).

At the time of Baxter's traffic stop, *Rodriguez v. United States* had clearly established the contours of Baxter's Fourth Amendment rights. *See* 575 U.S. 348. In *Rodriguez*, the Supreme Court held that an officer prolonged a traffic stop in violation of the defendant's Fourth Amendment rights when he conducted a dog sniff after completing the stop's mission. *See id.* at 350–51.

*Rodriguez*'s relevant facts follow. On a late evening in March 2012, a Nebraska police officer in a K9 unit observed a vehicle veer onto the shoulder of a state highway and then "jerk back onto the road." *Id.* at 351. That maneuver was unlawful, so the officer pulled the vehicle over. *Id.* The officer approached the vehicle, gathered the driver's license, registration, and insurance, and returned to his squad car where he ran a "records check" on the driver. *Id.* After conducting similar inquiries for a passenger seated in the front seat of the vehicle, the officer called for backup and started writing a warning ticket for the traffic violation. *Id.* The officer returned to the vehicle, where he issued the warning ticket, and asked the driver for permission to "walk his dog around [the] vehicle." *Id.* at 352. The driver refused. *Id.* The officer instructed the driver to "turn off the ignition, exit the vehicle, and stand in front of the patrol car." *Id.* The driver complied. *Id.* Backup arrived a few minutes later, and the officer conducted a dog sniff that revealed the presence of drugs. *Id.*

The factual similarities between *Rodriguez* and Baxter's case are striking. In both, an officer pulled a driver over for a traffic violation, approached the vehicle, collected the driver's paperwork, ran a check for warrants, typed up a warning citation, and returned to the vehicle to order the driver out for a dog sniff. In our view, this is a sufficiently "close factual fit" between the precedent and the instant case. *Cantu*, 974 F.3d at 1232.

There are also factual differences between the two cases. The differences, however, are not material to the qualified immunity analysis.

First, in *Rodriguez* but not the instant case, the officer actually delivered the warning ticket before ordering the driver out and conducting the dog sniff. That is a distinction without a difference with respect to the Fourth Amendment. In *Rodriguez*, the Supreme Court made clear that "[t]he critical question" in a stop duration analysis "is not whether the dog sniff occurs before or after the officer issues a ticket," but, rather, "whether conducting the sniff 'prolongs'—*i.e.*, adds time to—'the stop.'" 575 U.S. at 357.

Second, in *Rodriguez* but not the instant case, the driver located and handed over his vehicle registration right away. Under the facts as we must view them, this distinction has no effect on the Fourth Amendment analysis. As we have discussed, a reasonable jury could find that Deputy Lee gave up on the registration check halfway through the traffic stop when it became apparent Baxter could not find the registration. While *Rodriguez* makes clear that "ordinary inquiries incident" to the traffic stop—including the

registration check—are part of the stop's legitimate mission, *id.* at 355, no reasonable officer would think that *Rodriguez* allows for a slew of unrelated activities when a driver lacks documentation for an inquiry and the officer abandons the inquiry as a result.

Third, in *Rodriguez*, the focus of the stop duration analysis was the dog sniff itself. In the instant case, the focus is Deputy Lee's antecedent order for Baxter to exit the vehicle so that the dog sniff could take place. This distinction is also immaterial. Although it was not the focus of the Court's analysis in *Rodriguez*, the same action—*i.e.*, ordering the driver to step out as a precursor to the dog sniff—was also taken by the officer in *Rodriguez*. And *Rodriguez* established that neither the dog sniff *nor* the exit-the-vehicle order preceding it constitute part of a traffic stop's legitimate mission. *See* 575 U.S. at 356 (noting that "[o]n-scene investigation into other crimes" *and* "safety precautions taken in order to facilitate" such investigations both fall outside the scope of a traffic stop's mission).

Notwithstanding these minor differences, a reasonable officer in Deputy Lee's shoes would have been on fair notice that—by returning to Baxter's truck and ordering him to step out to conduct a dog sniff—he would be unlawfully prolonging the traffic stop in violation of Baxter's Fourth Amendment rights. The "constitutional question" was answered "beyond debate" in *Rodriguez* so that Baxter's Fourth Amendment rights were clearly established. *See Wade*, 13 F.4th at 1226 (quotations omitted).

To recap, there is a genuine dispute of material fact about whether Deputy Lee unlawfully prolonged the traffic stop when he ordered Baxter out of his truck to conduct a dog sniff. A reasonable jury could find that Deputy Lee's order to exit the truck came after the stop's mission either had or should have been completed. If a jury finds that fact at trial, Deputy Lee would have violated Baxter's clearly established Fourth Amendment rights in taking that action and he would not be shielded by qualified immunity. Accordingly, Deputy Lee is not entitled to qualified immunity on the stop duration issue at this stage. We vacate the district court's grant of summary judgment as to this issue.

### 3.  Arrest

Baxter argues that Deputy Lee arrested him without probable cause in violation of the Fourth Amendment. We agree that there is a genuine dispute of material fact about whether Deputy Lee arrested Baxter without probable cause. However, this genuine dispute of material fact is not enough to defeat qualified immunity because Deputy Lee did not violate a clearly established right in arresting Baxter for obstruction. As such, Deputy Lee was entitled to qualified immunity.

Under the Fourth Amendment, "the 'reasonableness' of an arrest is . . . determined by the presence or absence of probable cause." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). "[P]robable cause exists when the facts, considering the totality of the circumstances and viewed from the perspective of a

reasonable officer, establish 'a probability or substantial chance of criminal activity.'" *Washington v. Howard*, 25 F.4th 891, 898–99 (11th Cir. 2022) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). But "[a] warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Carter v. Butts Cnty.*, 821 F.3d 1310, 1319 (11th Cir. 2016) (quotation omitted).

The first part of our qualified immunity analysis is whether there is a genuine dispute of material fact about whether Deputy Lee arrested Baxter without probable cause. *See Grider*, 618 F.3d at 1254 (noting that, at the first step of the qualified immunity framework, we consider whether the plaintiff can "establish a constitutional violation"). We find that there is.

To determine whether Deputy Lee had probable cause, we must look to the elements of the law that Deputy Lee arrested Baxter for violating. *See Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th Cir. 2010) (noting that "[w]hether an officer possesses probable cause . . . depends on the elements of the alleged crime and the operative fact pattern"). The relevant law is Florida's nonviolent obstruction statute:

> Whoever shall resist, obstruct, or oppose any officer
> . . . in the lawful execution of any legal duty, without

offering or doing violence to the person of the officer,
shall be guilty of a misdemeanor of the first degree.

Fla. Stat. § 843.02. Under this provision, as interpreted by the
Florida courts, the crime of obstruction has two elements: (1) "the
officer was engaged in the lawful execution of a legal duty"; and (2)
"the defendant's action, by his words, conduct, or a combination
thereof, constituted obstruction or resistance of that lawful duty."
C.E.L. v. State, 24 So. 3d 1181, 1185–86 (Fla. 2009).

Our focus is whether a reasonable jury could find that
evidence of either element was lacking at the scene of the incident.
If so, Deputy Lee did not have probable cause to arrest Baxter. See,
e.g., Carter, 821 F.3d at 1320–21 (finding that officer was not
entitled to qualified immunity with respect to claim that he had
arrested plaintiffs for Georgia property crimes without probable
cause where summary judgment record indicated officer should
have known not all elements of the crimes had been met).

The material facts are depicted in the bodycam video. On
the video, we observe Baxter answering Deputy Lee's questions
and complying with his requests during the first several minutes of
the stop. The mood changes when Deputy Lee returns to Baxter's
truck after typing up the warning citation and orders Baxter to
"turn the truck off and step back here to me." In response, Baxter
starts questioning why he must exit the vehicle. Deputy Lee
explains that he has asked Baxter to step out so that he can "walk[]
the dog around the car." Baxter asks Deputy Lee what his

"probable cause" to conduct a dog sniff is, to which Deputy Lee responds, "I don't have to have probable cause."

It is hard to make out everything said after this point—Baxter and Deputy Lee begin to raise their voices and talk over each other—but it is clear that Baxter continues to dispute Deputy Lee's authority to conduct a dog sniff. Among other things, he claims that "the Supreme Court" forbids one in this situation. Simultaneously, Deputy Lee asserts and reasserts that he has the right to conduct a dog sniff and orders Baxter over and over to "step out of the car." After about a minute of this heated exchange, Baxter begins to try and exit the vehicle, fumbling at first with his seatbelt latch. Finally, he turns the truck off, takes the key out of the ignition, and exits. Once Baxter is out of the truck, Deputy Lee orders him to "hand me the keys," in response to which Baxter says, "No, they're my keys." Deputy Lee reaches for the keys and Baxter pulls them away, clutching them to his chest. At that point, Deputy Lee arrests Baxter.

We start with the second element of obstruction and find it clear that the "resistance" element *had* been met. The Florida courts have stated that this element is satisfied when "the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of [the officer's] legal duty." *C.E.L.*, 24 So. 3d at 1185–86. The bodycam footage shows a "combination" of both verbal and physical resistance to Deputy Lee's commands. First, Baxter refuses to comply with Deputy Lee's order to step out of the truck, instead repeatedly disputing

Deputy Lee's authority. Then, after Baxter does exit the truck, when Deputy Lee asks for his keys, Baxter physically resists that command by pulling the keys away. On this record, there is not a genuine dispute of material fact about whether Baxter resisted Deputy Lee. He clearly did.

The story is different, however, with respect to the first element of obstruction: "lawful execution of a legal duty." A reasonable jury could decide this element was not satisfied and that Deputy Lee therefore lacked probable cause for the arrest. Florida's obstruction statute makes clear that a citizen commits an obstruction offense *only if* his resistance is in response to the officer's "lawful execution of a legal duty." Fla. Stat. § 843.02. "To meet this threshold, the conduct of the officer must be consistent with the Fourth Amendment and any other relevant requirements of law." *C.E.L. v. State*, 995 So. 2d 558, 560 (Fla. 2d DCA 2008). This inquiry focuses on the specific point in time when the resistance occurred so that "[t]he essential inquiry" is "whether the officer was lawfully executing a legal duty *when the obstructing conduct occurred.*" *C.E.L.*, 24 So. 3d. at 1189 (emphasis in original). Ultimately, "[i]f an arrest is not lawful, then a defendant cannot be guilty of resisting it." *Jay v. State*, 731 So. 2d 774, 775 (Fla. 4th DCA 1999) (quotation omitted); *see also K.Y.E. v. State*, 557 So. 2d 956, 957 (Fla. 1st DCA 1990) ("[T]he common law rule still remains that a person may lawfully resist an illegal arrest without using any force or violence.").

To determine if there is a genuine dispute of material fact about whether Deputy Lee had probable cause to believe the "lawful execution" element of obstruction had been met, we must consider the legality of Deputy Lee's actions at the time of Baxter's resistance. The relevant action was Deputy Lee's order for Baxter to step out of the truck. As we have explained, a reasonable jury could find that Deputy Lee's order for Baxter to exit the vehicle unlawfully prolonged the stop's duration under the Fourth Amendment. If a reasonable jury could find that the order was unlawful, then it could also find that Deputy Lee was not lawfully executing a legal duty when Baxter resisted him so that Deputy Lee did not have probable cause to believe Baxter had committed an obstruction offense. *See, e.g.*, *Espiet v. State*, 797 So. 2d 598, 601–03 (Fla. 5th DCA 2001) (finding that defendant did not commit the crime of obstruction where his resistance was in response to a warrantless entry into his home that violated the defendant's Fourth Amendment rights). Thus, at the first step of the qualified immunity analysis, there is a genuine dispute of material fact about whether Deputy Lee arrested Baxter without probable cause in violation of his Fourth Amendment rights.

We next consider whether the right that may have been violated was "clearly established." *Grider*, 618 F.3d at 1254. We find that it was not. Therefore, Deputy Lee is entitled to qualified immunity whether or not the arrest was, in fact, lawful.

As analyzed earlier in this opinion, the critical question is whether the official had "fair warning" that his conduct was

unconstitutional. *Wade*, 13 F.4th at 1225. Baxter can satisfy his burden by pointing to (1) indistinguishable case law; (2) "a broad statement of principle within the Constitution, statute, or case law"; or (3) "conduct so egregious that a constitutional right was clearly violated." *Lewis*, 561 F.3d at 1291–92.

First, Baxter has failed to identify "materially similar" precedent bearing a "close factual fit" to the facts of this case. *See Cantu*, 974 F.3d at 1232. Baxter's case presents an unusual fact-pattern, in which: (1) a validly initiated traffic stop that may have been (2) unlawfully prolonged while (3) at least one legitimate aspect of the stop—the issuance of a warning citation—remained uncompleted led to (4) a driver resisting the officer's commands just seconds after the stop had (potentially) exceeded the Fourth Amendment's "stop duration" clock and (5) an arrest for obstruction. This is not garden-variety. We are unaware of—and Baxter has not identified—existing precedent dealing with remotely similar facts.

Second, there is no "broad statement of principle within the Constitution, statute, or case law" that clearly established Baxter's rights in this situation. *Lewis*, 561 F.3d at 1291–92. This method requires a plaintiff to identify a "legal principle [that] clearly prohibit[s] the officer's conduct in the particular circumstances before him." *Wesby*, 138 S. Ct. at 590. This requirement is "especially important in the Fourth Amendment context" because "[p]robable cause turns on the assessment of probabilities in particular factual contexts and cannot be reduced to a neat set of

legal rules." *Id.* (quotations omitted and alteration adopted). Baxter has not identified a legal principle that would have put every reasonable officer in Deputy Lee's position on notice that he could not arrest Baxter for obstruction. While Florida's obstruction statute sets out the baseline—*i.e.*, that the officer be engaged in the "lawful execution of [a] legal duty," Fla. Stat. § 843.02—that formulation is far too general to have clearly established Baxter's rights in this unique situation.

Third, this is not the rare case where a constitutional violation is "so egregious" that it is clear "even in the total absence of case law." *Lewis*, 561 F.3d at 1292. This method is reserved for "extreme circumstances" presenting "particularly egregious facts" that would have put any reasonable officer on notice that his actions "offended the Constitution." *Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020); *see also, e.g.*, *Hope v. Pelzer*, 536 U.S. 730, 734–35, 745 (2002) (holding that prison guards were not entitled to qualified immunity with respect to claim that they handcuffed a prisoner to a post in the hot sun for hours with little access to water and bathroom breaks, which were "obvious[ly] cruel[]" acts that "should have provided" the guards with "some notice" that their behavior violated the Eighth Amendment). This case presents no extreme circumstances.

Baxter has not proven that Deputy Lee violated his clearly established rights by arresting him for obstruction. As such, Deputy Lee was entitled to qualified immunity. We affirm the district court's grant of summary judgment as to that issue.

### 4. Use of Force

Baxter argues that Deputy Lee used excessive force in arresting him in violation of his Fourth Amendment rights. We disagree.

The Fourth Amendment prohibits the use of excessive force during an arrest. *Lee*, 284 F.3d at 1197. An excessive force claim arising from an arrest is "analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Under that standard, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397. "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Moreover, during an arrest, as we have often stated, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).

Baxter's excessive force claim warrants only brief consideration. The material facts are depicted on the bodycam video. On the video, we observe Deputy Lee initiate the arrest after Baxter verbally and then physically resisted his commands. In the brief part of the video that depicts the actual arrest, we see Deputy Lee grab Baxter's arm; force Baxter to the ground; twist his arm around and jerk it up; and then place him in handcuffs. The video does not show that—and Baxter does not claim that—

Deputy Lee used further force once Baxter was handcuffed.  Baxter asserts that he suffered a chipped tooth and facial abrasions.

Under our precedent, Deputy Lee's commonplace use of force in arresting Baxter—who was at that point physically resisting Deputy Lee's instructions—was clearly de minimis force that was permissible under the Fourth Amendment.  In cases strongly resembling this one, we have repeatedly held that similar uses of force in arrest scenarios passed constitutional muster.  *See, e.g.*, *Myers v. Bowman*, 713 F.3d 1319, 1327–28 (11th Cir. 2013) (holding that officer did not use excessive force when he "grabbed [the plaintiff] by the arm, forced him to the ground, placed him in handcuffs, and searched him"); *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (holding that officer did not use excessive force when he "grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that [the officer] was hurting him").  Baxter does not explain how this case is different, except to claim that he "posed no physical threat and complied with all requests."  That claim is simply not true.

There is no genuine dispute of material fact about whether Deputy Lee used excessive force in arresting Baxter.  He clearly did

not.[21] We affirm the district court's grant of summary judgment on the excessive force issue.

### C.  *Monell* Claims Against the Sheriff

Baxter also asserted claims against the Jackson County Sheriff for § 1983 municipal liability according to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[22] Baxter argues that the district court erred in granting summary judgment to the sheriff.  We disagree.

Under *Monell*, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original).  "*Respondeat superior* or vicarious liability will not attach under § 1983." *Id.*  Thus, "only when a 'policy or custom' of the municipality inflicts the injury does § 1983 liability exist." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1116 (11th Cir. 2005).  A plaintiff can establish the existence of a municipal policy or custom in several ways,

---

[21] Because we find no genuine dispute of material fact about whether Baxter used excessive force in arresting Baxter, we do not proceed to the second step of the qualified immunity analysis. *See Grider*, 618 F.3d at 1254.

[22] Again, because Baxter's claims implicate the sheriff's official capacity, those claims are "effectively an action against the governmental entity [the sheriff] represents," *i.e.*, the Jackson County Sheriff's Office. *Cook*, 402 F.3d at 1115. Baxter has never claimed that the Jackson County Sheriff had any personal involvement in Deputy Lee's alleged constitutional violations.

including by: (1) pointing to an official policy; (2) identifying "a widespread practice that, although not authorized by written or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law"; or (3) demonstrating that the municipality "tacitly authorize[d]" or "displaye[d] deliberate indifference towards" the "constitutionally offensive actions of its employees." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (quotation omitted). Ultimately, the plaintiff must show that the municipality's "policies [were] the moving force behind the constitutional violation." *Harris*, 489 U.S. at 379 (quotation omitted and alteration adopted).

Under the third method, Baxter argues that the sheriff was "deliberately indifferent" to a pattern of unlawful traffic stops by Deputy Lee. At summary judgment, Baxter provided only a single piece of evidence to support this claim: a May 2019 investigative report issued by the Florida Department of Law Enforcement (FDLE) regarding a March 2017 traffic stop and arrest of an unrelated individual by Deputy Lee and another officer.[23] The Jackson County Sheriff commissioned the report in August 2018 to investigate reported misconduct by the other officer—*not* Deputy Lee. The FDLE report noted that Deputy Lee's incident report

---

[23] Baxter also attempted to offer the witness statement of Deputy Cory Finch. The district court excluded this statement because Baxter did not timely disclose Finch as a potential witness. As we discussed, the district court did not abuse its discretion in excluding Finch's statement. Thus, we do not consider that statement in evaluating Baxter's *Monell* claims.

21-11428                 Opinion of the Court                 49

contradicted bodycam footage with respect to the stop's order of events, but did not otherwise criticize Deputy Lee's actions.

This simply is not enough. No reasonable jury could find that the Jackson County Sheriff caused Baxter's alleged constitutional injuries. Thus, there is no genuine dispute of material fact on this claim. We affirm the district court's grant of summary judgment on the *Monell* claims.

### D. State Law Claims

Finally, Baxter also asserted state law claims for false imprisonment and battery against both Deputy Lee and the Jackson County Sheriff. Baxter argues that the district court erred in granting summary judgment in the defendants' favor. We agree in part.

Before proceeding to Baxter's claims, we must introduce Florida's statutory immunity scheme. Florida provides partial immunity to state and local law enforcement officers who commit torts while acting within the scope of their employment:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, *unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton*

> *and willful disregard* of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a) (emphasis added). That is, an officer in Florida who commits a tort on the job can be held personally liable for resulting injuries only if he committed the tort in bad faith, wantonly, or maliciously. *See Keck v. Eminisor*, 104 So. 3d 359, 366 (Fla. 2012). An officer acts maliciously when he acts with "the subjective intent to do wrong." *Peterson v. Pollack*, 290 So. 3d 102, 109 (Fla. 4th DCA 2020) (quotation omitted).

If a Florida officer does not commit an on-the-job tort in bad faith, maliciously, or wantonly, the officer's employer—*i.e.*, either the state or one of its localities—is vicariously liable:

> The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers is by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a).

In sum, when an officer commits an on-the-job tort in bad faith, maliciously, or wantonly, the officer (and not his employer)

is liable. *See Keck*, 104 So. 3d at 366. But for all other on-the-job torts, the officer's employer (and not the officer) is liable. *Id.* That is, "[i]n any given situation either the agency can be held liable under Florida law, or the employee, but not both." *McGhee v. Volusia Cnty.*, 679 So. 2d 729, 733 (Fla. 1996).

We now consider Baxter's state law claims against the defendants.

### 1. False Imprisonment

Baxter argues that the district court erred in granting the defendants summary judgment on his false imprisonment claim. We agree in part.

We begin by applying false imprisonment law to the facts at hand, and then we turn to statutory immunity. As an initial matter, we note that the false imprisonment analysis changes as Baxter's encounter with Deputy Lee progresses. The critical points are: (a) the initial traffic stop, (b) Deputy Lee's prolongation of the stop, and (c) Deputy Lee's arrest of Baxter.

In Florida, "[f]alse imprisonment is the unlawful restraint of a person against his will." *Johnson v. Weiner*, 19 So. 2d 699, 700 (Fla. 1944). "The key aspects of false imprisonment are imprisonment contrary to the plaintiff's will and the unlawfulness of the detention." *Harder v. Edwards*, 174 So. 3d 524, 530 (Fla. 4th DCA 2015) (quotation omitted and alteration adopted). Against a law enforcement officer, "probable cause is a complete bar to an

action for . . . false imprisonment." *Bolanos v. Metro. Dade Cnty.*, 677 So. 2d 1005, 1005 (Fla. 3d DCA 1996).

The first element—"imprisonment contrary to the plaintiff's will"—is met because Deputy Lee stopped and arrested Baxter during the December 2017 traffic stop. *See Harder*, 174 So. 3d at 530. Thus, in determining whether Baxter's false imprisonment claim presents genuine disputes of material fact, our focus is on the second element: whether there are parts of Baxter's detention that a reasonable jury could find were unlawful. *See id.*

In analyzing Baxter's § 1983 claims, we identified two potentially unlawful acts by Deputy Lee. First, he may have unlawfully prolonged the stop by ordering Baxter to step out of his truck for a dog sniff. Second, he may have arrested Baxter without probable cause. Because these two issues present genuine disputes of material fact about whether Deputy Lee violated Baxter's constitutional rights, they also present genuine disputes of material fact about whether Deputy Lee falsely imprisoned Baxter. That is, if a jury finds that either of Deputy Lee's actions were unconstitutional, it could also find that those actions were tortious. *See, e.g.*, *Mathis v. Coats*, 24 So. 3d 1284, 1289–90 (Fla. 2d DCA 2010) (reversing grant of summary judgment in false imprisonment claim and allowing for filing of amended complaint where plaintiff "may be able to demonstrate that . . . probable cause ceased to exist to justify her continued detention" in jail). This holding, however, is limited to Deputy Lee's prolongation of the stop and his arrest of Baxter; it does not mean that there was false imprisonment from

21-11428                Opinion of the Court                53

the outset.    Rather, because the traffic stop was based on reasonable suspicion that Baxter had been driving carelessly in violation of Florida law, the district court was correct to grant summary judgment as to the initial stop. *Cf. Bolanos*, 677 So. 2d at 1005 (noting that "probable cause is a complete bar to an action for . . . false imprisonment").

Deputy Lee argues that, even if he unlawfully (and therefore tortiously) detained Baxter, he is entitled to statutory immunity at the summary judgment stage under Florida's law-enforcement-immunity scheme.  We disagree.

Florida's immunity scheme shields an officer from individual liability for on-the-job torts as long as the officer did not commit the tort in bad faith, maliciously, or wantonly. *See* Fla. Stat. § 768.28(9)(a).  On this record, we think a reasonable jury could find that Deputy Lee falsely imprisoned Baxter with malice. Notably, Baxter testified at his deposition that, after Deputy Lee arrested him, he overheard Deputy Lee tell a sergeant who had arrived at the scene that "I got to charge him with something.  I roughed him up."   Baxter also testified that, on two separate occasions after the December 2017 incident, Deputy Lee harassed Baxter on the road by pulling his squad car up behind Baxter's truck, flipping his lights on as if to pull Baxter over, and then just "cruis[ing] on by."  A jury would be free to believe this testimony. If it does, it could also find that Deputy Lee unlawfully detained Baxter with "the subjective intent to do wrong," which would be

enough to defeat Deputy Lee's claim to statutory immunity. *Peterson*, 290 So. 3d at 109.

That said, we think a reasonable jury could also find that Deputy Lee *did not* falsely imprison Baxter with malice. If so, under Florida's immunity scheme, Deputy Lee's employer (the Jackson County Sheriff's Office), would be liable for Deputy Lee's non-malicious tort. *See Keck*, 104 So. 3d at 366. Thus, the false imprisonment claim relating to arrest and prolongation cannot be dismissed against the Jackson County Sheriff at this stage either.

Accordingly, we affirm in part and vacate in part the district court's grant of summary judgment as to Baxter's false imprisonment claims against Deputy Lee and the Jackson County Sheriff.

### 2.   Battery

Baxter argues that the district court erred in granting the defendants summary judgment on his battery claim. We disagree.

In Florida, battery has two elements: (1) "inten[t] to cause a harmful or offensive contact," and (2) a resulting "offensive contact with the person of the other." *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996). In the arrest context, "[a] battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *Id.* "If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery." *Id.* But, "ordinary incidents of [an] arrest . . . do not give rise to an

independent tort." *Lester v. City of Tavares*, 603 So. 2d 18, 19–20 (Fla. 5th DCA 1992).

Baxter's battery claim is no stronger than his unpersuasive § 1983 claim of excessive force. As we explained above, in arresting Baxter, Deputy Lee used brief and restrained force—grabbing Baxter, forcing him to the ground, and pulling his arm up— necessary to subdue a resisting suspect. His use of force during the arrest was entirely ordinary and does not give rise to a battery claim under Florida law. *See, e.g.*, *Behm v. Campbell*, 925 So. 2d 1070, 1073 (Fla. 5th DCA 2006) (affirming grant of summary judgment in officers' favor on battery claim where plaintiff's claim "involve[d] acts that [were] simply part of the arrest process and thus [did] not involve a separate tort"). There is no genuine dispute of material fact about whether Deputy Lee committed battery. He did not. We affirm the district court's grant of summary judgment on the battery claim against Deputy Lee and the Jackson County Sheriff.[24]

## IV.  Conclusion

For the reasons we have stated, we **AFFIRM** in part, **VACATE** in part, and **REMAND** for further proceedings.

In particular, we **VACATE** the district court's summary judgment on the § 1983 claim against Deputy Lee, but only with

---

[24] Because we find that there is no genuine dispute of material fact about whether Deputy Lee committed battery, we need not consider whether Deputy Lee would be entitled to statutory immunity.

respect to the issue of whether Deputy Lee unlawfully prolonged the traffic stop in violation of Baxter's Fourth Amendment rights.

We also **VACATE** the district court's summary judgment on the false imprisonment claim against both Deputy Lee and the Jackson County Sheriff, but only with respect to the issues of whether Deputy Lee tortiously detained Baxter by (1) unlawfully prolonging the traffic stop and (2) arresting Baxter without probable cause.

We **AFFIRM** the district court's summary judgment in all other respects, as well its decision to exclude the witness statement of Cory Finch.

21-11428 WILSON, J., concurring in part and dissenting in part    1

WILSON, Circuit Judge, concurring in part and dissenting in part:

I concur with the Majority's well-reasoned and thorough analysis vacating the district court's grant of summary judgment on Baxter's § 1983 claim. However, I write separately to dissent from the Majority's finding that there is no genuine dispute of material fact concerning Baxter's initial traffic stop.

If, at the summary judgment stage, the evidence presented by the parties creates any reasonable doubt, we are required to credit the non-movant's version of events regardless of whatever the ultimate truth of the matter may be. *See Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013). Under Baxter's version of events, Baxter was not swerving or crossing lines except to change lanes safely. This plausible explanation is directly at odds with Lee's version of events, and therefore Baxter's claim ought to survive summary judgment.

The Majority, however, disagrees. The Majority finds Baxter's statement to Lee that he had been "trying to make a phone call" sufficient to find Baxter conceded to driving erratically. However, Baxter's statement is open to interpretation, and we are not afforded the ability to conclusively interpret facts here. The final inferences to be drawn from Baxter's initial excuse are for the jury at trial, not the courts at summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) ("Credibility determinations, the weighing of the evidence, and the

2    WILSON, J., concurring in part and dissenting in part     21-11428

drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quotation marks omitted)).

For these reasons, I would also vacate the grant of summary judgment for Baxter's claim of an unlawful initial traffic stop and therefore I respectfully dissent on this issue.